Marie Roy BRANDES, Robert Roy Brandes, Beverly Brandes Coffman, and William A. Brandes, Appellants,

v.

RICE TRUST, INC., and William Marsh Rice University, Appellees.

No. 14–96–01186–CVH.

Court of Appeals of Texas, Houston (14th Dist.).

March 26, 1998.

 

Percy L. 'Wayne' Isgitt, Houston, for appellants.

Robert M. Weylandt, Ronald C. Lewis, Houston, for appellees.

Before LEE, AMIDEI and ANDERSON, JJ.

## OPINION

AMIDEI, Justice.

Marie Roy Brandes and her three children, Robert Roy Brandes, Beverly Brandes Coffman, and William A. Brandes, appeal a summary judgment for Rice Trust, Inc., and William Marsh Rice University (Rice). Appellants sued Rice for tortious interference with their inheritance rights from Dr. Max F. Roy and intentional infliction of emotional distress arising out of a deathbed gift by Dr. Roy to Rice. In three points of error, appellants contend there are genuine issues of material fact and Rice failed to carry its burden of proof. We affirm.

## I. BACKGROUND.

Dr. Max F. Roy made a deathbed transfer of approximately $4,000,000.00 in municipal bonds to Rice. Dr. Roy died four hours later on October 14, 1992, in Los Alamos, New Mexico. Dr. Roy's will was probated in New Mexico and he left Marie Roy Brandes, his sister, all of his *tangible personal property* (except cash on hand). The will had a residuary clause whereby Dr. Roy left the rest and residue of his *tangible and intangible* property of *any type* to Rice. After the will was probated, Ms. Brandes contested the will in the New Mexico court alleging undue influence on the part of Rice in the procurement of Dr. Roy's will. Summary judgment against Ms. Brandes was entered in the New Mexico court dismissing all her claims against Rice. Thereafter, Ms. Brandes and her three children sued Rice for (1) tortious interference with their inheritance rights from Dr. Roy, and (2) intentional infliction of severe emotional distress arising from Rice's conduct in pressuring Dr. Roy on his deathbed to transfer the bonds to Rice.

## II. SUMMARY JUDGMENT.

In three points of error, appellants contend the trial court erred in granting summary judgment because Rice failed to establish by competent summary judgment evidence: (1) there was no issue of material fact and Rice was entitled to summary judgment as a matter of law; (2) that appellants did not have any expectancy to receive the bonds; and (3) there was a lack of fraud, duress or trickery by Rice in procuring Dr. Roy's gift of the bonds.

Rice's motion for summary judgment alleged that appellants' claims were invalid as a matter of law because (1) Dr. Roy made the gift of his own free will without any coercion by Rice, and (2) appellants have no inheritance expectancy from Dr. Roy because Ms. Brandes did not receive any intangible property under Dr. Roy's will and her three children, Robert Brandes, William Brandes, and Beverly Brandes Coffman, were not named as beneficiaries in the will. The bonds that were given to Rice by Dr. Roy on his deathbed would have passed to Rice by Dr. Roy's probated will and appellant would not have received the bonds by the terms of his will.

Appellants (nonmovants) responded alleging (1) Dr. Roy's will was ambiguous and Rice's summary judgment evidence does not prove appellants have no expectancy of an inheritance, (2) Dr. Roy was incapable of exercising his free will in the face of his advanced cancer and impending death, and (3) Rice's summary judgment evidence does not negate any elements of appellants' claim of outrageous conduct and intentional infliction of emotional distress. Appellants submitted no summary judgment evidence in support of their response to Rice's motion for summary judgment and only argued Rice's evidence was insufficient.

### A. Standard of Review.

In order to prevail on summary judgment, the movant must disprove at least one of the essential elements of each of the plaintiff's causes of action. *Lear Siegler, Inc. v. Perez,* 819 S.W.2d 470, 471 (Tex.1991). This burden requires the movant to show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. *Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548–49 (Tex.1985). In determining whether a material fact issue exists to preclude summary judgment, evidence favoring the nonmovant is taken as true, and all reasonable inferences are indulged in favor of the nonmovant. *Id.; see also Doe v. Boys Clubs of Greater Dallas, Inc.,* 907 S.W.2d 472, 477 (Tex.1995). Any doubt is resolved in favor of the nonmovant. *Nixon,* 690 S.W.2d at 548–49; *see also Doe,* 907 S.W.2d at 477.

Where the nonmovant opposes a summary judgment based upon an affirmative defense, the nonmovant must produce sufficient summary judgment evidence to raise a question of fact as to each element of the affirmative defense in order to avoid summary judgment. *Brownlee v. Brownlee,* 665 S.W.2d 111, 112 (Tex.1984); *City of Houston v. Clear Creek Basin Authority,* 589 S.W.2d 671, 678–79 (Tex.1979). The movant is not required to negate every possible issue of law and fact that could have been raised by the nonmovant, but rather the burden of raising and producing sufficient evidence with respect to affirmative defenses is on the nonmovant. *Id.* at 678–79.

Where summary judgment evidence raises no more than surmise or suspicion of fact in issue, no genuine issue of fact exists to defeat summary judgment. *Booth v. Cathey,* 893 S.W.2d 715, 719 (Tex.App.—Texarkana 1995) *rev'd on other grounds,* 900 S.W.2d 339 (Tex. 1995). For summary judgment purposes, an issue is conclusively established if ordinary minds cannot differ as to the conclusion to be drawn from the evidence. *Bookman v. Bolt,* 881 S.W.2d 771, 774 (Tex.App.—Dallas 1994, writ denied).

### B. Applicable Law.

1. Interference with inheritance rights. In *King v. Acker,* 725 S.W.2d 750, 754 (Tex. App.—Houston [1 st Dist.] 1987, no writ), the court of appeals held "that a cause of action for tortious interference with inheritance rights exists in Texas." *Id.* To date, there are no other reported Texas cases involving this tort. The *King* court cited the RESTATE-

MENT (SECOND) OF TORTS 774B (1977) which provides:

> One who by fraud, duress or other tortious means intentionally prevents another from receiving from a third person an inheritance or gift that he would otherwise have received is subject to liability to the other for loss of the inheritance or gift.

*Id.* at 754.

2. **Intentional Infliction of Emotional Distress.** To recover under this tort, the plaintiff must prove that (1) the defendant acted intentionally or recklessly, (2) the conduct was "extreme and outrageous," (3) the actions of the defendant caused the plaintiff emotional distress, and (4) the resulting emotional distress was severe. *Wornick Co. v. Casas,* 856 S.W.2d 732, 734 (Tex.1993)

Outrageous conduct is that which "goes beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Wornick Co.,* 856 S.W.2d at 734. "It is for the court to determine, in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery...." *Id.* There is no liability for intentional infliction of emotional distress where an actor was exercising his legal rights. *Id.* at 735.

## C. The Summary Judgment Evidence.

**1. Appellees' Evidence.** In support of its motion for summary judgment, Rice submitted the affidavits of Scott W. Wise, James A. Dinkel, and William W. Akers.

a. **Wise's Affidavit.** Scott Wise was the President and Treasurer for Rice and would be an "interested witness." TEX.R. CIV. P. 166a(c). *See also Martin v. Cloth World of Texas, Inc.,* 692 S.W.2d 134, 135–36 (Tex. App.—Dallas 1985, writ ref'd n.r.e.). Mr. Wise attached Dr. Roy's probated will and codicil to his affidavit which named Rice Trust, Inc., as executor. Mr. Wise stated Dr. Roy called Rice to advise them he wished to donate all of his municipal bond holdings to Rice. In July 1992, Mr. Wise visited Dr. Roy and Dr. Roy confirmed his decision to make the gift of bonds to Rice. The bonds were to be added to the Roy Endowed Schol-arship Fund for merit scholarships. Mr. Wise stated he was familiar with all of Dr. Roy's wills.

The probated will of Dr. Roy was attached and provided a specific bequest to Ms. Brandes, as follows:

> I bequeath to my sister, MARIE ROY BRANDES, all of my clothing, jewelry, personal belongings, household goods, furniture, furnishing and automobiles and all other *tangible personal property* not otherwise specifically bequeathed (except cash on hand), owned by me at the time of my death (emphasis added).

The will further provided, in pertinent part:

> All of the rest, residue and remainder of the property which I may own at the time of my death, real, personal and mixed, *tangible and intangible,* of whatsoever nature and wheresoever situated, ... including all lapsed legacies and devises *or other gifts made by this Will which fail for any reason,* I bequeath and devise to [Rice] ... to be added to its fund known as the Roy Scholarship Fund .... (emphasis added).

b. **Dinkel's Affidavit.** James A. Dinkel was Dr. Roy's tax accountant from 1989 through 1992. He would not be an interested witness. Mr. Dinkel testified Dr. Roy told him he wanted to give the municipal bonds to Rice. Mr. Dinkel stated Dr. Roy was concerned about minimizing his tax obligations. He further stated Dr. Roy advised him he intended to give Rice all financial assets left in his estate.

c. **Akers' Affidavit.** William W. Akers was a professor at Rice and a former director. He would be an interested witness under rule 166a. Mr. Akers and Dr. Roy had been friends for years. Mr. Akers visited Dr. Roy in Los Alamos, New Mexico, in October 1992. Dr. Roy wanted Mr. Akers to witness a codicil to his will directing his remains be cremated. Dr. Roy also executed a letter authorizing Texas Commerce Bank National Association to transfer his municipal bonds to Rice University which likewise was witnessed by Mr. Akers. Mr. Akers stated the gift of the bonds to Rice was entirely voluntary and done at Dr. Roy's

request and Mr. Akers did nothing to force or trick Dr. Roy to sign the letter authorizing the transfer of the bonds. Attached to the affidavit were Dr. Roy's will, the codicil, and the letter to the bank authorizing the bond transfer.

d. Other evidence. Also attached to Rice's motion for summary judgment was a certified copy of Ms. Brandes' petition contesting the probate of Dr. Roy's will and a certified copy of the judgment entered in favor of Rice granting summary judgment to Rice and denying all claims asserted by Mrs. Marie Roy Brandes' will contest. Also attached were the entire sets of appellants responses to Rice's interrogatories. Appellants were asked in interrogatory No. 10: "Please state each fact or reason upon which you base your allegation that Rice, by tortious means, intentionally prevented plaintiffs from receiving any inheritance from Dr. Roy." The appellants' answered: "The Plaintiffs have not alleged that RTI, by tortious means, intentionally prevented plaintiffs from receiving any inheritance from Dr. Roy."

2. **Appellants' Evidence.** The appellants' response contended Dr. Roy's will was ambiguous because he left Ms. Brandes "all other *tangible personal property*" and then left the residuary estate including *tangible* and intangible property to Rice. Appellants' argument was that this ambiguous construction caused Rice "concern" that they might not get the bonds and Rice then "convinced" Dr. Roy that he should give the bonds to Rice before he died to save $27,000.00 in income taxes. Appellants further alleged Dr. Roy was not mentally competent to transfer the bonds because of his physical condition. Appellants argued that this conduct was fraud, duress and tortious conduct intended to deprive appellants of their inheritance they would *otherwise receive*. Appellants further contended that Rice's conduct was outrageous conduct and led to the infliction of severe emotional distress for appellants.

Appellants submitted no summary judgment evidence in any form to negate the evidence presented by Rice in its motion for summary judgment.

**D. Application of the Law to the Facts.**

Appellants filed their second amended petition with their response to Rice's motion for summary judgment within seven days of the date of the hearing and it was timely. TEX.R. CIV. P. 166a(c). Thereafter, Rice filed its response to appellants response alleging appellants raised no issue of fact precluding summary judgment and that "plaintiffs concede that Rice has advanced legal arguments which Rice believes obviate Plaintiffs' claims of outrageous or tortious conduct." The judgment of the trial court stated, in pertinent part, "all of plaintiffs' claims shall be and hereby are dismissed with prejudice." Appellants contend Rice did not address their claim of intentional infliction of emotion distress raised for the first time in their amended original petition filed with their response.

Rice's response to appellants response to Rice's motion for summary judgment did address the new cause of action of intentional infliction of emotional distress and outrageous conduct. Appellants' amended petition and argument in their response to the motion for summary judgment premised this claim on the same conduct by Rice alleged to have caused them to lose their inheritance from Dr. Roy. The judgment of the trial court dismissed *all claims* of appellants and was therefore a final judgment against all claims raised in their second amended petition. *See Continental Airlines, Inc. v. Kiefer*, 920 S.W.2d 274, 276–277 (Tex.1996). "A defendant must amend or supplement its motion for summary judgment after a petition is amended to address the new cause of action in order to dispose of the entire case." *Smith v. Atlantic Richfield Co.*, 927 S.W.2d 85, 88 (Tex.App.—Houston [1st Dist] 1996, writ denied). Affidavits attached to the original motion for summary judgment could be considered in deciding an amended motion for summary judgment. *Whitaker v. Huffaker*, 790 S.W.2d 761, 763–64 (Tex.App.—El Paso 1990, writ denied).

Appellants argue all of their points of error together and we will address them together. Appellants contend the affidavits of Mr. Wise and Mr. Akers are affidavits of interested witnesses and Rice has failed to meet their

burden of proof because the credibility of the summary judgment affiants was the dispositive factor in the case and summary judgment was inappropriate citing *Casso v. Brand,* 776 S.W.2d 551, 558 (Tex.1989). Appellants further argue these affidavits did not negate their allegations that they would have received the bonds under Dr. Roy's will if he hadn't been tricked into giving them to Rice. Appellants also contend the factual recitations in Akers' affidavit cannot be readily controverted since Dr. Roy is deceased. We disagree.

▆▆▆ Summary judgment may be granted on the basis of uncontroverted testimonial evidence of an interested witness if that evidence "is clear, positive and direct, otherwise credible and free from contradictions and inconsistencies, and could have been readily controverted." TEX.R. CIV. P. 166a(c); *see Casso v. Brand,* 776 S.W.2d 551, 558 (Tex. 1989); *Lopez v. Motel 6 G.P., Inc.,* 932 S.W.2d 76, 79 (Tex.App.—El Paso 1996), *rev'd on other grounds,* 929 S.W.2d 1 (Tex. 1996). The language " 'could have been readily controverted' does not simply mean that the movant's summary judgment proof could have been easily and conveniently rebutted. Rather, it means that testimony at issue is of a nature which can be effectively countered by opposing evidence." *Casso,* 776 S.W.2d at 558; *Lopez,* 932 S.W.2d at 79. Summary judgment is inappropriate if the credibility of the affiant or deponent is likely to be a dispositive factor in the resolution of the case. *Casso,* 776 S.W.2d at 558. "Summary judgment may be proper if the nonmovant must come forth with independent evidence in order to prevail but fails to do so." *Hamamcy v. Wyckoff Heights Hosp.,* 786 S.W.2d 32, 34 (Tex.App.—Fort Worth 1990, writ denied). "If the nonmovant must, in all likelihood, come forth with independent evidence to prevail, then summary judgment may well be proper in the absence of such controverting proof." *Casso,* 776 S.W.2d at 558.

▆▆▆ The affidavits of Mr. Akers and Mr. Wise, with the will of Dr. Roy attached, are "clear, positive and direct, otherwise credible and free from contradictions and inconsistencies, and could have been readily

controverted." These affidavits clearly establish that Dr. Roy called Rice first and asked them to come to see him about the gift of the bonds. Mr. Akers testified he and Dr. Roy were old friends and he did nothing to force him to sign the transfer to Rice. Any concerns about Dr. Roy's competency at the time of executing his duly probated will have been adjudicated by the probate and will contest in favor of Rice in New Mexico. Likewise, Mr. Dinkel, who was not an "interested witness," testified Dr. Roy told him of his plans to give the bonds to Rice. The will itself leaves Ms. Brandes all Dr. Roy's tangible personal property. All of the "rest and residue" of the tangible personal property, along with all of the intangible property, which included *lapsed or failed* gifts, went to Rice under the will. If Ms. Brandes had died before Dr. Roy, the gift to her under the will, including the tangible property, would have passed to Rice as the residuary legatee. 74 TEX. JUR. 3d *Wills* § 266 (1990). Since she survived Dr. Roy, her gift was limited to the specific bequests and the tangible personal property. The residuary clause leaving Rice the "rest and residue" of the tangible property did not apply and Rice took only the intangible property. A general residuary clause passes whatever may remain of the testator's property after the specific devises and legacies have been satisfied. *Id.* "Intangible property" is defined by BLACK'S LAW DICTIONARY 726 (5th ed. 1979) as "such property as has no intrinsic and marketable value, but is merely the representative or evidence of value, such as certificates of stock, *bonds,* promissory notes, and franchises." Therefore, had Dr. Roy not transferred the bonds to Rice prior to his death, Rice would have received them as intangible property under Dr. Roy's will. The children of Ms. Brandes were not named in the will and would have no claim to the estate. We find Rice has disproved at least one the essential elements of appellants claim of interference with inheritance rights by proving appellants had no right of expectancy from Dr. Roy's will because by the terms of that will, he did not leave them the municipal bonds. The testimony in the affidavits could have been effectively countered by opposing evidence. Since appellants presented no controverting

proof, summary judgment was proper under these circumstances as to their claim of interference with inheritance rights.

■ Likewise, the claim of intentional infliction of emotional distress fails. The evidence clearly indicates that Mr. Wise and Mr. Akers had a legal right to see Dr. Roy. It was Dr. Roy who asked them to come to Los Alamos because he wanted to leave the bonds to Rice. Nothing in the record indicates Rice went to Dr. Roy without being invited for the purpose of tricking him into signing the bond transfer. Both Wise and Akers were there as representatives of Rice to attend to a legal and proper gift by Dr. Roy and for no other reason. There is no liability for intentional infliction of emotional distress where an actor does no more than insist on its legal rights. *Wornick Co.*, 856 S.W.2d at 737; *Lee v. Levi Strauss & Co.*, 897 S.W.2d 501, 505–506 (Tex.App.—El Paso 1995, no writ). Appellants produced no controverting proof and summary judgment was proper on both causes of action. *Casso*, 776 S.W.2d at 559. *See also Sakowitz, Inc. v. Steck*, 669 S.W.2d 105, 107–08 (Tex.1984) (Nonmovant failed to controvert summary judgment proof with controverting affidavits). We overrule appellants points of error one, two, and three and affirm the judgment of the trial court.