# IN THE SUPREME COURT OF TEXAS

═══════════

No. 16-0256

═══════════

RICHARD T. ARCHER, DAVID B. ARCHER,
CAROL ARCHER BUGG, JOHN V. ARCHER,
KAREN ARCHER BALL, AND SHERRI ARCHER, PETITIONERS,

v.

T. MARK ANDERSON AND CHRISTINE ANDERSON, AS
CO-EXECUTORS OF THE ESTATE OF TED ANDERSON, RESPONDENTS

══════════════════════════════════════════

ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE THIRD DISTRICT OF TEXAS

══════════════════════════════════════════

**Argued October 11, 2017**

CHIEF JUSTICE HECHT delivered the opinion of the Court, in which JUSTICE GREEN, JUSTICE GUZMAN, JUSTICE DEVINE, and JUSTICE BLACKLOCK joined.

JUSTICE JOHNSON filed an opinion, concurring in part and dissenting in part, and concurring in the judgment, in which JUSTICE LEHRMANN, JUSTICE BOYD, and JUSTICE BROWN joined.

Last Term, in *Kinsel v. Lindsey*, we noted that Texas has never recognized a cause of action for intentional interference with inheritance but left open the question whether we should do so.[1] Today, to eliminate continuing confusion over the matter and resolve a split among the courts of appeals, we answer that question. Because existing law affords adequate remedies for the wrongs

_____

[1] 526 S.W.3d 411, 423 (Tex. 2017) ("Neither our precedent nor the Legislature has blessed tortious interference with an inheritance as a cause of action in Texas. Its viability is an open question.").

the tort would redress, and because the tort would conflict with Texas probate law, we hold that there is no cause of action in Texas for intentional interference with inheritance. We affirm the judgment of the court of appeals.[2]

## I

John R. "Jack" Archer, a successful oil-and-gas businessman, married and divorced 4 times but had no children. His closest family was a brother, Richard Archer, and Richard's 6 children (loosely referred to as "the Archers").[3] Jack executed a will in 1991 that left the bulk of his roughly $7.5 million estate to the Archers, including a 1,000-acre ranch, mineral interests, homes, life insurance, bank accounts, a large coin collection, and many other assets. The little Jack did not leave to them—part of his mineral interests worth some $90,000—Jack left to 12 Christian charities.[4]

In August 1998, Jack, then 71, suffered a stroke and was hospitalized for several weeks. When he returned home, the Archers assisted with his care. He regularly misidentified people, was delusional, and was sometimes disoriented. He never fully recovered.

---

[2] 490 S.W.3d 175 (Tex. App.—Austin 2016).

[3] Five of the children—Carol A. Bugg, David B. Archer, John V. Archer, Karen A. Ball, and Sherri Archer—are petitioners. The sixth, James Michael Archer, has never been a party to the suit. Their father, Richard, died in 2009, prior to trial. In our review of the events leading up to this case, we mean by "the Archers" the Richard Archer family. In discussing the contentions of the parties, we use "the Archers" to refer to Richard Archer's 5 children who remain parties to the case.

[4] The charities were Campus Crusade for Christ at Arrowhead Springs, San Benito, California; Young Life, Corpus Christi, Texas; Child Evangelism Fellowship, Warrenton, Missouri; Laity Lodge, Kerrville, Texas; Christian Associates International, Orange, California; Bill Glass Evangelistic Association, Dallas, Texas; Agape Foundation, Donna, Texas; The Bible League, South Holland, Illinois; Moral Majority, Forrest, Virginia; Intervarsity Christian Fellowship, Madison, Wisconsin; James Robison Ministries, Fort Worth, Texas; and Prison Fellowship Ministries, Washington, D.C.

2

A few weeks after Jack's stroke, Ted Anderson, an attorney and Jack's longtime friend, drafted durable and medical powers of attorney appointing himself as Jack's attorney-in-fact. Jack signed the documents, but his medical records showed that the day he signed them he was delusional and appeared confused. Anderson also tried to have Jack change his estate plan. Anderson proposed that Jack sell his ranch and transfer the proceeds into a charitable remainder trust with the 12 charities as beneficiaries so that Jack's entire estate would go to the charities and the Archers would be disinherited. Jack complained that Anderson was forcing him to sell the ranch against his will, so Anderson dropped the proposal.

Anderson then hired attorneys Richard Leshin and Buster Adami to draft estate planning documents for Jack. Jack began distancing himself from the Archers, and for a while they lost all contact. So in the fall of 1999, the Archers instituted guardianship proceedings for Jack in Blanco County. Leshin and Adami appeared for Jack and agreed to the appointment of temporary guardians of his person and estate. Leshin advised Anderson that further estate planning for Jack would have to await termination of the guardianship. But Anderson retained a new lawyer for Jack, who repudiated the agreed guardianship. At Anderson's request, Leshin had Jack sign wills and trust documents, all disinheriting the Archers and leaving Jack's entire estate to the charities. Leshin later testified that he received all his instructions from Anderson, did not talk with Jack before preparing the wills and trust documents, and knew doctors disagreed about Jack's mental capacity. Leshin also testified that he did not determine for himself whether Jack had the mental capacity to validly execute the documents but instead relied on Anderson's representations.

The Archers nonsuited the guardianship proceeding in Blanco County and refiled it in Bexar County. Over Jack's new attorney's opposition, the court appointed guardians of Jack's person and estate. After an accounting of Jack's estate was filed, showing that all his assets were in trust, the Archers learned of the wills and trust disinheriting them. Rather than wait until Jack's death and challenge the charities in a will contest, the Archers decided to immediately challenge the trust. The Archers agreed to pay their attorneys, who had been charging hourly rates, a contingent fee of 40% of all Jack's assets recovered. With Jack still alive, the Archers sued for a declaratory judgment that Jack had lacked the mental capacity to execute the wills and trust documents. The charities, the beneficiaries of the trust, were defendants. In May 2002, the parties settled. The charities agreed not to probate Jack's post-1991 wills, and the Archers agreed to give the charities Jack's coin collection and pay their attorney fees. Those fees and the value of the coin collection, which was in addition to what the charities would receive under Jack's 1991 will, totaled $588,054.

The Archers sued Anderson on Jack's behalf for breach of fiduciary duty, intentional infliction of emotional distress, and legal malpractice. The Archers also sued others on Jack's behalf and settled for, in their words, "hundreds of thousands of dollars". Anderson died in March 2006, and Jack died a month later. Jack's 1991 will was probated, and the Archers took their bequests under it. The following year, the Archers brought this action against Anderson's estate for intentional interference with their inheritance, alleging that Anderson influenced Jack to disinherit them. They concede that Anderson never profited personally from his efforts and that they have never been able to show his motivation other than some unexplained personal malice. They also concede that in the end, they received all that Jack left them in his 1991 will, but they claim as

4

damages the $588,054 they gave the charities in settlement, plus $2,865,928 in attorney fees and litigation expenses they incurred avoiding Jack's post-1991 wills and trusts. The jury found in favor of the Archers but awarded only $2,006,150 in damages. The trial court rendered judgment on the verdict but added $588,054.

Both sides appealed. The court of appeals concluded that this Court has never recognized tortious interference with inheritance as a cause of action in Texas and deferred to this Court to decide whether to do so.[5] The appeals court reversed and rendered judgment for Anderson.[6] We granted the Archers' petition for review.[7]

## II

The Archers argue that tortious interference with an inheritance has long been part of Texas law, but as we noted at the outset, less than a year ago we stated in *Kinsel v. Lindsey* that neither this Court nor the Legislature has ever recognized such an action.[8] The appellate courts that have recognized the tort, we explained, largely relied on *King v. Acker*, a decision of the Court of Appeals for the First District of Texas in Houston.[9] *King* concluded that this Court impliedly recognized the cause of action in *Pope v. Garrett*.[10] But this, we said, was "an inaccurate reading of our precedent",

---

[5] 490 S.W.3d at 177.

[6] *Id.* at 179.

[7] 60 Tex. Sup. Ct. J. 1230 (June 16, 2017).

[8] 526 S.W.3d 411, 423 (Tex. 2017).

[9] *Id.* (citing *King v. Acker*, 725 S.W.2d 750 (Tex. App.—Houston [1st Dist.] 1987, no writ)).

[10] *King*, 725 S.W.2d at 754 (citing *Pope v. Garrett*, 204 S.W.2d 867 (Tex. Civ. App.—Galveston 1947), *rev'd in part*, 211 S.W.2d 559, 562 (Tex. 1948)).

5

and whether to recognize the tort remained "an open question" that could be answered only by weighing the factors that we have repeatedly held must be considered in determining whether to recognize a new cause of action.[11] We declined to consider the matter further because the claimants had another adequate remedy—the imposition of a constructive trust.[12]

The court of appeals in the present case, which issued its opinion before *Kinsel*, correctly concluded that this Court has not recognized a tort of intentional interference with inheritance.[13] Further, the court of appeals acknowledged, neither the appellate courts nor the trial courts should recognize the tort "in the first instance".[14] "Absent legislative or supreme court recognition of the existence of a cause of action," the court wrote, "we, as an intermediate appellate court, will not be the first to do so. We must . . . follow the existing law rather than change it".[15]

Since *Kinsel*, both courts of appeals sitting in Houston have considered whether the tort should be recognized. In *Yost v. Fails*, the Court of Appeals for the First District of Texas continued to follow its precedent, *King*, in holding that a cause of action for intentional interference with an inheritance exists.[16] *Yost* neither cited *Kinsel* nor analyzed the factors for deciding whether to recognize a new cause of action; it simply followed *King*.[17] A few weeks later, in *Rice v. Rice*, the

---

[11] *Kinsel*, 526 S.W.3d at 423–424 & n.6.

[12] *Id.* at 424.

[13] 490 S.W.3d 175, 177 (Tex. App.—Austin 2016).

[14] *Id.*

[15] *Id.* (citations omitted).

[16] 534 S.W.3d 517, 529–530 (Tex. App.—Houston [1st Dist.] 2017, no pet.).

[17] *See id.*

Court of Appeals for the Fourteenth District of Texas, also in Houston, reached the opposite conclusion.[18] The court acknowledged that it had recognized the tort in *Brandes v. Rice Trust, Inc.*, relying on *King*, which had relied on *Pope*.[19] But following *Kinsel*'s contrary analysis of *Pope*, the court concluded that it was relieved of its *stare decisis* obligation to follow *Brandes*.[20] Nor would it follow *Yost*, the *Rice* court said, because that court had neither cited *Kinsel* nor analyzed the factors noted in that case to be considered in determining whether to recognize a new cause of action.[21] Ultimately, it concluded that the case before it did "not warrant an extension of existing law" because "the parties . . . already [had] an adequate remedy."[22]

The First and Fourteenth Courts of Appeals' 10-county districts completely overlap.[23] Cases are randomly assigned between them.[24] In the aftermath of *Kinsel*, judges, lawyers, and parties in cases in those districts must follow opposite rules: a cause of action for intentional interference with an inheritance does and may not exist. The concurring opinion minimizes this confusion, speculating that the cases will be relatively few, and courts will eventually follow *Kinsel*'s holding that a tort

---

[18] 533 S.W.3d 58, 62–63 (Tex. App.—Houston [14th Dist.] 2017, no pet.).

[19] *Id.* at 60 (citing *Brandes v. Rice Trust, Inc.*, 966 S.W.2d 144, 146–147 (Tex. App.—Houston [14th Dist.] 1998, pet. denied) (acknowledging *King*'s holding "that a cause of action for tortious interference with inheritance rights exists in Texas" (quoting *King v. Acker*, 725 S.W.2d 750, 754 (Tex. App.—Houston [1st Dist.] 1987, no writ)))).

[20] *Id.* at 62.

[21] *Id.* at 63.

[22] *Id.*

[23] *See* TEX. GOV'T CODE § 22.201(b), (o); *see also id.* §§ 22.202–.2021, –.215.

[24] *Id.* § 22.202(h).

7

does not exist when there is another adequate remedy.[25] As we will explain, whether to recognize a tort to provide an adequate remedy begs the question of what remedy is adequate. Existing remedies are not inadequate merely because they do not provide the relief a tort would. The fundamental difficulty with the tort is that it claims for the judiciary the authority to supplant or augment statutory probate law and settled remedies and principles whenever they are perceived to be unfair. Whether there will be many cases or few in the Houston courts of appeals districts and throughout Texas, we think we should avoid the waste of public and private resources arguing over a question we can answer, especially when the answer is as clear as we think it is.

## III

## A

Courts that have recognized the tort of intentional interference with inheritance have mostly relied on Section 774B of the *Restatement (Second) of Torts*, which provides that "[o]ne who by fraud, duress or other tortious means intentionally prevents another from receiving from a third person an inheritance or gift that he would otherwise have received is subject to liability to the other for loss of the inheritance or gift."[26] Section 774B has been replaced by Section 18 of the *Restatement (Third) of Torts: Liability for Economic Harm*,[27] which states:

> (1)     A defendant is subject to liability for interference with an inheritance or gift if:

---

[25] *Post* at __.

[26] RESTATEMENT (SECOND) OF TORTS § 774B (AM. LAW INST. 1979).

[27] RESTATEMENT (THIRD) OF TORTS: LIAB. FOR ECON. HARM § 18 (AM. LAW INST., Tentative Draft No. 3, approved May 21, 2018).

> (a)　　the plaintiff had a reasonable expectation of receiving an inheritance or gift;
>
> (b)　　the defendant committed an intentional and independent legal wrong;
>
> (c)　　the defendant's purpose was to interfere with the plaintiff's expectancy;
>
> (d)　　the defendant's conduct caused the expectancy to fail; and
>
> (e)　　the plaintiff suffered injury as a result.
>
> (2)　　A claim under this Section is not available to a plaintiff who had the right to seek a remedy for the same claim in a probate court.

Section 18(1) changes 4 elements of the tort:

- the inheritance or gift is one the plaintiff "had a reasonable expectation of receiving" rather than one the plaintiff "would otherwise have received";

- the defendant must commit an "independent legal wrong" rather than act by "fraud, duress or other tortious means";

- the defendant's conduct must "cause[] the expectancy to fail" rather than "prevent[] [the plaintiff] from receiving" the property; and

- the plaintiff must incur simply an "injury" rather than the "loss of the inheritance or gift."

None of these differences appears to be material. But Section 18(2) is a substantive change, at least insofar as it makes explicit that the tort is "not available to a plaintiff who had the right to seek a remedy for the same claim in a probate court."

While a cause of action for intentional interference with an inheritance might take other forms, we focus our analysis on Sections 774B and 18. We have repeatedly explained the policy analysis we use in deciding whether to recognize a new cause of action:

9

The considerations include social, economic, and political questions and their application to the facts at hand. We have weighed the risk, foreseeability, and likelihood of injury against the social utility of the actor's conduct, the magnitude of the burden of guarding against the injury, and the consequences of placing the burden on the defendant. Also among the considerations are whether one party would generally have superior knowledge of the risk or a right to control the actor who caused the harm.[28]

The issue here is not whether these considerations support remedies for misconduct that prevents a person from disposing of his estate as he wishes. They all certainly do. Rather, the issue is whether these considerations support additional or different remedies than those already afforded by statutory probate law and a suit in equity for unjust enrichment. We begin by examining the conflicts between existing law and the Section 774B and Section 18 tort and then turn to whether an additional tort remedy is needed.

**B**

Harvard Law Professors John C.P. Goldberg and Robert H. Sitkoff have made a strong case against recognizing the tort in a lengthy article recently published in the *Stanford Law Review*.[29] They conclude that the tort

is conceptually and practically unsound. . . . [I]t is deeply problematic from the perspectives of both inheritance law and tort law. It undermines the core principle of freedom of disposition that undergirds American inheritance law. It invites circumvention of principled policies encoded in the specialized rules of procedure applicable in inheritance disputes. In many cases, it has displaced venerable and better-fitting causes of action for equitable relief. It has a derivative structure that violates the settled principle that torts identify and vindicate rights personal to the

---

[28] *Pagayon v. Exxon Mobil Corp.*, 536 S.W.3d 499, 504 (Tex. 2017) (quoting *Humble Sand & Gravel, Inc. v. Gomez*, 146 S.W.3d 170, 182 (Tex. 2004)); *see also Kinsel v. Lindsey*, 526 S.W.3d 411, 423–424 n.6 (Tex. 2017); *Ritchie v. Rupe*, 443 S.W.3d 856, 878 (Tex. 2014); *Roberts v. Williamson*, 111 S.W.3d 113, 118 (Tex. 2003).

[29] John C.P. Goldberg & Robert H. Sitkoff, *Torts and Estates: Remedying Wrongful Interference with Inheritance*, 65 STAN. L. REV. 335 (2013).

plaintiff. . . . [T]he emergence of the interference-with-inheritance tort is symptomatic of two related and unhealthy tendencies in modern legal thought: the forgetting of restitution and equitable remedies, and the treatment of tort as an unstructured delegation of power to courts to impose liability whenever doing so promises to deter antisocial conduct or compensate victims of such conduct.[30]

There are opposing views, Professors Goldberg and Sitkoff acknowledge,[31] but their rebuttals of contrary arguments are convincing.

Fundamentally, probate law protects a donor's right to freely dispose of his property as he chooses.[32] An interference tort, it is argued, reinforces that protection.[33] But a prospective beneficiary has no right to a future inheritance; he has only an expectation that is dependent on the donor's exercise of his own right. The tort of intentional interference with inheritance gives a beneficiary his own right, one he does not otherwise have. That right is sometimes said to be derivative of the donor's right, but the beneficiary's exercise of his own right may or may not protect the donor's right of free disposition.[34] A beneficiary's interests and motives and those of his donor

---

[30] *Id.* at 335–336.

[31] Specifically, their article notes that Professor Diane J. Klein at the University of La Verne College of Law has written most extensively in favor of recognizing the tort. *See id.* at 363 & n.188, 365 n.198; *see also* Diane J. Klein, *"Go West, Disappointed Heir": Tortious Interference with Expectation of Inheritance—A Survey with Analysis of State Approaches in the Pacific States*, 13 LEWIS & CLARK L. REV. 209 (2009); Diane J. Klein, *River Deep, Mountain High, Heir Disappointed: Tortious Interference with Expectation of Inheritance—A Survey with Analysis of State Approaches in the Mountain States*, 45 IDAHO L. REV. 1 (2008); Diane J. Klein, *A Disappointed Yankee in Connecticut (or Nearby) Probate Court: Tortious Interference with Expectation of Inheritance—A Survey with Analysis of State Approaches in the First, Second, and Third Circuits*, 66 U. PITT. L. REV. 235 (2004) [hereinafter *A Disappointed Yankee in Connecticut*]; Diane J. Klein, *The Disappointed Heir's Revenge, Southern Style: Tortious Interference with Expectation of Inheritance—A Survey with Analysis of State Approaches in the Fifth and Eleventh Circuits*, 55 BAYLOR L. REV. 79 (2003).

[32] Goldberg & Sitkoff, *supra* note 29, at 338.

[33] *A Disappointed Yankee in Connecticut*, *supra* note 31, at 238–240.

[34] Goldberg & Sitkoff, *supra* note 29, at 379.

may be consistent, but they may also conflict. Family relationships and the very personal feelings they involve change. An expectancy is powerful motivation to ignore reality and misperceive a donor's true intent.

Intentional interference with inheritance is thus different from intentional interference with a business opportunity, another kind of expectancy. Like the beneficiary of an inheritance, a competitor has no right to a future opportunity.[35] But he does have the right not to be disadvantaged by unfair competition that is tortious or wrongful.[36] The plaintiff and defendant share that right, and the question is whether the defendant crossed the line. When there is unlawful interference with a commercial or business opportunity, tort law recognizes a remedy.[37] A remedy is warranted because the defendant's unlawful behavior impeded the plaintiff's liberty interest, that is, "an interest in pursuing productive activity free from wrongful interference."[38] The expectation of a prospective beneficiary is different. He has no right to fairness; he gets only what the donor chooses to give, fairly or unfairly. Probate law protects the donor's interest in making that choice freely.

Tort law "is ill-suited to posthumous reconstruction of the true intent of a decedent."[39] Even before his death, a donor may not wish to disclose his true intentions, offending family and friends.

---

[35] *See id.* at 387; *Wal-Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711, 727 (Tex. 2001) (observing that cases involving tortious interference with prospective business relations involve "two parties . . . competing for interests to which neither is entitled").

[36] *See* Goldberg & Sitkoff, *supra* note 29, at 387; *Wal-Mart Stores, Inc.*, 52 S.W.3d at 726 ("We therefore hold that to recover for tortious interference with a prospective business relation a plaintiff must prove that the defendant's conduct was independently tortious or wrongful.").

[37] *Wal-Mart Stores, Inc.*, 52 S.W.3d at 726.

[38] Goldberg & Sitkoff, *supra* note 29, at 387–388.

[39] *Id.* at 338.

Probate law employs specialized doctrines and procedures to arrive at the testator's true intent. Courts use principles of "undue influence" and "duress" to distinguish the unclear demarcation between legitimate persuasion and overbearing influence.[40] These carefully developed doctrines take into account the context of "nuanced family dynamics and customs that are often inaccessible to outsiders."[41]

Moreover, the evidentiary rules and procedures in probate law strike a balance between honoring a testator's actions while addressing situations where those actions were wrongfully taken. "Safeguarding freedom of disposition requires the court to invalidate a disposition that was not volitional because it was procured by undue influence. But openness to circumstantial evidence facilitates the bringing of strike suits by disgruntled family members whom the decedent truly meant to exclude."[42] This justifies the rule that a will contestant has the burden of proving that a will was wrongfully procured.[43] These and other carefully constructed provisions were enacted by the Legislature and should be respected. It is not prudent for the Court to recognize a new tort simply because probate procedures sometimes present hardships or even bar a plaintiff's recovery.

Comment a to Section 18 states that the tort "is not meant to interfere with probate law or to provide a way for a plaintiff to avoid its limits and restrictions" but is "to provide relief when . . .

---

[40] *Id.*

[41] *Id.*

[42] *Id.* at 346 (footnotes omitted).

[43] *See id.* ("The contestant normally has the burden of proving that a will was procured by undue influence.").

13

no remedy is available in probate."[44] It is not enough, according to comment c, that probate law "offers less generous relief than would be attainable in tort."[45] The tort is available only "if a probate court, for whatever reason, lacks the power to provide redress."[46] But limits on a probate court's power are among the "limits and restrictions" of probate law with which the tort "is not meant to interfere".[47] Given probate law's extensive and thorough provisions to protect an owner's free devise of his property, the lack of further remedies must be viewed not as legislative oversight but legislative choice.

## C

A tort of intentional interference with inheritance is needed, it is argued, as a gap-filler when probate and other law do not provide an adequate remedy.[48] Texas law thoroughly governs inheritance through probate and restitution and, as we noted in *Kinsel*, provides remedies for unfairness, such as a constructive trust.[49] If these remedies are inadequate, it is because of legislative choice or inaction, and filling them is work better suited for further legislation than judicial adventurism.

---

[44] RESTATEMENT (THIRD) OF TORTS: LIAB. FOR ECON. HARM § 18 cmt. a (AM. LAW INST., Tentative Draft No. 3, approved May 21, 2018).

[45] *Id.* cmt. c.

[46] *Id.*

[47] *Id.* cmt. a.

[48] Goldberg & Sitkoff, *supra* note 29, at 365.

[49] 526 S.W.3d 411, 425 (Tex. 2017) ("A constructive trust is an equitable, court-created remedy designed to prevent unjust enrichment." (quoting *KCM Fin. LLC v. Bradshaw*, 457 S.W.3d 70, 87 (Tex. 2015))).

A court already has broad authority to rectify inequity using a constructive trust in an action for restitution to prevent unjust enrichment.[50] As early as the first *Restatement of Restitution*, published in 1937, the underlying principle has been stated as thus: "Where a disposition of property by will or an intestacy is procured by fraud, duress or undue influence, the person acquiring the property holds it upon a constructive trust, unless adequate relief can otherwise be given in a probate court."[51] Most recently, the *Restatement (Third) of Restitution and Unjust Enrichment* explains liability in restitution owing to wrongful interference with a donor's freedom of disposition as follows: "If assets that would otherwise have passed by donative transfer to the claimant are diverted to another recipient by fraud, duress, undue influence, or other intentional misconduct, the recipient is liable to the claimant for unjust enrichment."[52] The doctrine, therefore, is malleable to fit the particular needs of each situation.

"[R]estitution by way of constructive trust" operates as "a gap-filling complement, rather than a rival, to the will contest in probate."[53] Most importantly, the body of restitution law "is sensitive to 'the rules of procedure, standards of proof, and limitations periods applicable in probate cases,' so that [it] cannot be used 'to circumvent' probate[] . . . procedures."[54] In *Kinsel*, we

---

[50] *See* Goldberg & Sitkoff, *supra* note 29, at 350 ("A constructive trust is a flexible remedy that courts of equity have long used to prevent unjust enrichment."); *Meadows v. Bierschwale*, 516 S.W.2d 125, 131 (Tex. 1974) ("Constructive trusts, being remedial in character, have the very broad function of redressing wrong or unjust enrichment in keeping with basic principles of equity and justice.").

[51] RESTATEMENT (FIRST) OF RESTITUTION § 184 (AM. LAW INST. 1937).

[52] RESTATEMENT (THIRD) OF RESTITUTION AND UNJUST ENRICHMENT § 46(1) (AM. LAW INST. 2011).

[53] Goldberg & Sitkoff, *supra* note 29, at 351.

[54] *Id.* (quoting RESTATEMENT (THIRD) OF RESTITUTION & UNJUST ENRICHMENT § 46 cmt. c).

concluded that the constructive trust remedy was adequate to redress the alleged injuries.[55] Suits on established torts, such as fraud, conversion, theft, and breach of fiduciary duty, as well as suit under the Declaratory Judgment Act, may also be available. The Court has never been persuaded that the remedies provided by probate law and established torts are inadequate.

In *Kinsel*, we left open the possibility that situations could arise to justify recognition of the tort of intentional interference with inheritance, but we did not hint at what they might be.[56] Nor are we able to do so. Professor Diane Klein, a prominent proponent of the tort, posits 4 specific factual scenarios in which the probate system falls short, justifying the need for a tort action. None of the situations warrants recognition of the tort.

One scenario is when an intestate heir tortiously induces the testator to make a will that is more favorable to the tortfeasor than to another heir.[57] The estate's payment of the expenses of a good-faith will contest would diminish the value of the challenger's share, and if the will is struck down, the tortfeasor would still collect through intestacy or a prior will, leaving the offender unpunished.[58] But the rule that costs of a good-faith will contest are paid from the estate is established by the law of probate.[59] Good policy arguments can certainly be made that the rule punishes the innocent and provides no deterrence to wrongdoing. But to use this example to argue

---

[55] 526 S.W.3d 411, 424 (Tex. 2017).

[56] *See id.* at 423–425.

[57] *See A Disappointed Yankee in Connecticut*, *supra* note 31, at 247.

[58] *Id.*

[59] TEX. EST. CODE § 352.052(a)–(b).

for a tort remedy is to say, not that probate law is inadequate, but that it is wrong, and that courts should circumvent legislative policy.

Another proffered scenario justifying recognition of the tort is when a would-be beneficiary lacks standing to contest a will.[60] But standing rules are broad. A person interested in the outcome of an estate plan has standing,[61] including anyone having "a property right in or claim against [the] estate being administered".[62] An interested person also may file an application admitting a will to probate, even when the will has been destroyed.[63] To the extent that these rules might not include someone with some expectation of a gift is, again, a legislative choice.

A third situation posited by Professor Klein is when someone obtains a gift in place of the testator's originally named beneficiary through undue influence.[64] Even if the will provision is invalidated in probate, it is argued, the gift may not be restored, and the tortfeasor will not be penalized.[65] The tortfeasor may even still benefit if he is a residuary beneficiary.[66] Further, the wrongdoing may be concealed until probate is closed. But in such circumstances, restitution may afford relief, and if the relief is lacking, the reason is legislative choice. Against the policy argument

---

[60] *A Disappointed Yankee in Connecticut*, *supra* note 31, at 247.

[61] TEX. EST. CODE § 55.001.

[62] *Id.* § 22.018(1).

[63] *Id.* § 256.051(a).

[64] *A Disappointed Yankee in Connecticut*, *supra* note 31, at 248.

[65] *Id.*

[66] *Id.*

17

for relief is the policy argument that probate proceedings should not be retried in a tort action, certainly a reasonable view.

Professor Klein's fourth scenario is when a tortfeasor uses undue influence or fraud to induce the testator to make inter vivos transfers depleting the estate.[67] The transfers might not be discovered until after the testator's death, and while the property might be recovered through restitution, it might also be beyond reach. But the limits of restitution simply recognize that not every wrong can be remedied.

The factual scenarios posited by Professor Klein are by no means an exhaustive list of cases in which proponents of recognizing the tort argue that it is necessary to fill a gap left open by probate procedures. Still, we are unable to imagine a situation in which the lack of a full remedy is not a legislative choice or a matter for targeted legislative amendments to probate law and procedures. A general interference tort is not a solution.

**D**

The Archers argue that probate and other remedies are inadequate because they do not allow recovery of their attorney fees incurred in setting aside Jack's post-1991 wills and trust and their expenses in settling with the charities. But settling their declaratory judgment action against the charities was the Archers' choice, as were their decisions not to seek attorney fees against the charities and to pay the charities' fees. The Archers argue that their remedies were inadequate because they did not punish Anderson, the wrongdoer. And they argue more broadly that a

---

[67] *Id.*

18

beneficiary wrongfully deprived of an inheritance should not be limited to reimbursement of expenses by the estate in a will contest.

At bottom, the Archers' argument is for a different probate process than the Legislature has created, specifically attorney fee shifting so that an award of fees does not diminish the estate. We agree generally that the law should discourage wrongdoing and punish wrongdoers. But the Archers asserted 3 other causes of action against Anderson—breach of fiduciary duty, intentional infliction of emotional distress, and legal malpractice. The law provided adequate remedies for the Archers' injuries. Even if a tort of intentional interference with inheritance were recognized, the Archers would not recover based on *Kinsel*.[68]

### E

But the case prompts us to answer the question left open there. We have now had 2 opportunities in successive Terms to consider the creation of a new tort. Neither case calls for one, and the circumstances involved in each, along with thorough analyses of the issues in judicial opinions and legal scholarship, provide compelling reasons not to recognize the tort.

The concurring opinion's "overriding concern" is that we have too little information to know whether to recognize the tort of intentional interference with inheritance.[69] In the concurring opinion's view, there is little risk in deferring the issue again, as we did in *Kinsel*. There do not appear to be many such cases, and the risk of confusion, the concurring opinion believes, is low.[70]

---

[68] 526 S.W.3d 411, 424 (Tex. 2017) (holding that the plaintiffs were not entitled to recover for tortious interference with an inheritance because a constructive trust provided an adequate remedy).

[69] *Post* at __.

[70] *Id.* at __.

The concurring opinion argues that courts will get the message after *Kinsel* that the tort would only be available in extraordinary circumstances.[71] We do not share so rosy a view of things. We have called the tort of intentional infliction of emotional distress a "gap-filler",[72] but it is nevertheless invoked in a great many cases. We believe the bench, bar, and public deserve a straight answer when one is as clear as here.

We share fully, of course, the concurring opinion's concern that the elderly and disabled not be taken advantage of. But all the good efforts to assure their protection to which the concurring opinion points are legislative.[73] The concurring opinion argues that a new tort is needed to assure free disposition of estates.[74] But as we have noted, the tort creates rights in expectancies that are often in conflict with those of property owners. With our state's extensive, settled probate procedures and its attention to and improvements in guardianship processes,[75] the Legislature has shown itself to be active and creative in protecting the vulnerable. An expansion of tort law is not needed.

---

[71] *Id.* at __.

[72] *Standard Fruit & Vegetable Co. v. Johnson*, 985 S.W.2d 62, 68 (Tex. 1998).

[73] *See post* at __.

[74] *Id.* at __.

[75] *See, e.g.*, TEX. EST. CODE § 1101.151(a) (providing for court appointment of a guardian with full authority over an incapacitated person upon a finding "that the proposed ward is totally without capacity to care for himself or herself, manage his or her property, operate a motor vehicle, make personal decisions regarding residence, and vote in a public election"); TEX. GOV'T CODE § 155.102 (requiring certification for certain guardians).

Importantly, the concurring opinion agrees that "the Archers had adequate remedies"[76] even though those remedies do not allow them to recover their attorney fees and settlement costs in litigating with the charities. The concurring opinion does not explain why the limits of the law of probate and unjust enrichment might be expanded for some, just not the Archers. Our decision that any expansion should be left to the Legislature is a principled reason for concluding that the Archers' remedies were adequate. The concurring opinion does not agree with our analysis but offers no reason of its own for reaching the same conclusion.

Finally, the concurring opinion argues that other states that have recognized the tort "have adopted what are seemingly pragmatic and workable standards."[77] If that is true, and it is far from clear what the effects of the tort have been in other jurisdictions, we think a new tort is not needed in Texas. The fundamental question is why tort law should provide a remedy in disregard of the limits of statutory probate law. We think here it should not.

The tort of intentional interference with inheritance is not recognized in Texas. The decisions of the courts of appeals to the contrary are overruled.[78]

---

[76] *Post* at ___.

[77] *Id.* at __.

[78] These include *Yost v. Fails*, 534 S.W.3d 517, 530 (Tex. App.—Houston [1st Dist.] 2017, no pet.); *Stern v. Marshall*, 471 S.W.3d 498, 516 (Tex. App.—Houston [1st Dist.] 2015, no pet.); *In re Estate of Valdez*, 406 S.W.3d 228, 233 (Tex. App.—San Antonio 2013, pet. denied); *In re Estate of Russell*, 311 S.W.3d 528, 535 (Tex. App.—El Paso 2009, no pet.); *Brandes v. Rice Trust, Inc.*, 966 S.W.2d 144, 146–147 (Tex. App.—Houston [14th Dist.] 1998, pet. denied); *King v. Acker*, 725 S.W.2d 750, 754 (Tex. App.—Houston [1st Dist.] 1987, no writ).

*     *     *     *     *

The judgment of the court of appeals is

*Affirmed.*

_____

Nathan L. Hecht
Chief Justice

Opinion delivered: June 22, 2018

22