Appellants, T. Mark ANDERSON, as Co-Executor of the Estate of Ted Anderson, and Christine Anderson, as Co-Executor of the Estate of Ted Anderson// Cross-Appellants, David R. Archer, Carol Archer Bugg, John V. Archer, Karen Archer Ball, and Sherri Archer

v.

Appellees, Richard T. ARCHER, David R. Archer, Carol Archer Bugg, John V. Archer, Karen Archer Ball, and Sherri Archer// Cross-Appellees, T. Mark Anderson, as Co-Executor of the Estate of Ted Anderson, and Christine Anderson, as Co-Executor of the Estate of Ted Anderson

NO. 03–13–00790–CV

Court of Appeals of Texas, Austin.

Filed: March 2, 2016

Scott R. Kidd, Kidd Law Firm, Austin, TX, for Appellant.

Frank N. Ikard Jr., Laurie Ratliff, Ikard Golden Jones, P.C., Austin, TX, for Appellee.

Before Chief Justice Rose, Justices Pemberton and Field

### *OPINION*

Scott K. Field, Justice

 T. Mark Anderson and Christine Anderson, as co-executors of the estate of Ted Anderson (collectively, the Andersons), appeal the trial court's judgment awarding Richard T. Archer, David

R. Archer, Carol Archer Bugg, John V. Archer, Karen Archer Ball, and Sherri Archer (collectively, the Archers), $2,564,899.90 in damages. The Archers have filed a cross-appeal, insisting that they were entitled to recover additional damages as a matter of law. The Archers' recovery of any damages in this case rests on the validity of a jury finding that Ted Anderson tortiously interfered with their rights to an inheritance from their uncle, Jack Archer. As a result, the dispositive issue in this appeal is whether Texas law recognizes a cause of action for tortious interference with inheritance. Because we conclude it does not, we must reverse the trial court's judgment and render judgment that the Archers take nothing on their claim against the Andersons.

## ANALYSIS

The Archers contend that Texas courts have recognized a common-law tort for interfering with inheritance and cite to Texas cases that have arguably recognized some form of the tort. *See, e.g., Stern v. Marshall,* 471 S.W.3d 498, 516 (Tex.App.—Houston [1st Dist.] 2015, no pet.) (observing that court recognized cause of action for tortious interference with inheritance in *King v. Acker,* 725 S.W.2d 750 (Tex. App.—Houston [1st Dist.] 1987, no writ)); *In re Estate of Valdez,* 406 S.W.3d 228, 233 (Tex.App.—San Antonio 2013, pet. denied) (relying on *King v. Acker* for proposition that "Texas law recognizes a cause of action for tortious interference with inheritance rights"); *Clark v. Wells Fargo Bank, N.A.,* No. 01–08–00887–CV, 2010 WL 2306418, at *5 (Tex.App.—Houston [1st Dist.] June 10, 2010, no pet.) (mem.op.) (same); *In re Estate of Russell,* 311 S.W.3d 528, 535 (Tex.App.—El Paso 2009, no pet.) (same). *But see Jackson Walker, LLP v. Kinsel,* No. 07–13–00130–CV, 2015 WL 2085220, at *3 (Tex.App.—Amarillo Apr. 10, 2015, pet. filed) (mem.op.) (con-cluding that Texas law does not authorita-tively recognize cause of action for tortious interference with inheritance). Those de-cisions trace back to a 1987 decision of the First Court of Appeals, *King v. Acker,* which in turn relied on section 774B of the Second Restatement of Torts. *See* Re-statement (Second) of Torts § 774B (1979) ("One who by fraud, duress or other tor-tious means intentionally prevents another from receiving from a third person an inheritance or gift that he would otherwise have received is subject to liability to the other person for loss of the inheritance or gift."). But this Court has never purport-ed to hold that a tortious-interference-with-inheritance tort has been or should be recognized in Texas law. While the Arch-ers insist that we did so in *Neill v. Yett,* 746 S.W.2d 32 (Tex.App.—Austin 1988, writ denied), they are mistaken.

In that case, Neill filed a petition con-testing the validity of her grandfather's will, which had left the grandfather's es-tate to his wife, a church, and a charitable trust created by the will. *Id.* at 33. Neill filed proceedings attempting to set aside the judgment of probate and, alternatively, sought to impose a constructive trust on her grandfather's property. The opinion states that Neill had also "pleaded a cause of action against her grandmother, the bank, and the attorneys for damages for tortious interference with her 'statutory and constitutional rights and her inheri-tance expectancy.'" *Id.* at 34. In consid-ering Neill's complaint that the trial court improperly granted summary judgment against her and ordered that she take nothing by her suit, the Court observed that, until the final probate court judgment was set aside, Neill could have no "inheri-tance expectancy," a bar to any claim that such right was tortiously interfered with. *Id.* at 35. The Court also noted that Neill had neither "set forth the elements of her

*claimed* cause of action for tortious interference," nor stated the manner in which she met those requirements. *Id.* (emphasis added). Finally, the Court wrote:

> In any event and *if, indeed, a cause of action for tortious interference with an "inheritance expectancy" exists,* the district court properly granted summary judgment. The summary judgment proof conclusively established that such cause, as well as the claim for fraud upon which a constructive trust might be imposed, was barred by limitations. ,

*Id.* (emphasis added). Rather than recognizing or endorsing a cause of action for tortious interference with inheritance rights, as the Archers contend, the Court's language reflects that it pointedly disclaimed any such holding. *Neill* is not susceptible of being read as this Court's recognition of the existence of this cause of action.[1]

In short, we agree with the Amarillo Court of Appeals that "neither this Court, the courts in *Valdez, Clark,* and *Russell,* nor the trial court below can legitimately recognize, in the first instance, a cause of action for tortiously interfering with one's inheritance." *See Kinsel,* 2015 WL 2085220, at *3. We also agree with the Amarillo court's assessment that neither the Legislature nor Texas Supreme Court has done so, or at least not yet. *See id.* at *3. Absent legislative or supreme court recognition of the existence of a cause of action, we, as an intermediate appellate court, will not be the first to do so. *See Burroughs v. APS Int'l, Ltd.,* 93 S.W.3d 155, 161 (Tex.App.—Houston [14th Dist.] 2002, pet. denied); *Bennight v. Western Auto Supply Co.,* 670 S.W.2d 373, 379–80

(Tex.App.—Austin 1984, writ ref'd n.r.e.); *see also Petco Animal Supplies, Inc. v. Schuster,* 144 S.W.3d 554, 565 (Tex.App.—Austin 2004, no pet.) ("As an intermediate appellate court, we are not free to mold Texas law as we see fit but must instead follow the precedents of the Texas Supreme Court unless and until the highest court overrules them or the Texas Legislature supersedes them by statute."). We must, in short, follow the existing law rather than change it, and we have adhered to that basic limiting principle in a variety of contexts. *See, e.g., Texas Dep't of Pub. Safety v. Cox Tex. Newspapers, L.P.,* 287 S.W.3d 390, 394–95, 398 (Tex.App.—Austin 2009) (declining to recognize proposed judicial expansion of common-law or constitutional privacy exceptions to mandatory disclosure under Public Information Act), *rev'd on other grounds,* 343 S.W.3d 112, 120 (Tex.2011) (Texas Supreme Court ultimately adopting proposed expansion); *cf. Ex parte Perry,* 471 S.W.3d 63, 83–87 (Tex.App.—Austin 2015) (similarly declining to judicially expand availability of pretrial habeas-corpus relief and observing that "[i]f the Texas criminal justice system should operate differently, that change must come from the Court of Criminal Appeals or the Legislature"), *aff'd in part, rev'd in part on other grounds,* 483 S.W.3d 884, 898(Tex.Crim.App. 2016) (Texas Court of Criminal Appeals concluding that pretrial habeas-corpus relief is available vehicle for government official to advance as-applied separation of powers claim that alleges infringement of his own power as government official).

The Archers contend that the Texas Supreme Court has recognized a common-law

---

1. The same is true of *Meduna v. Holder,* No. 03–06–00484–CV, 2008 WL 1911184 (Tex. App.—Austin Apr. 30, 2008, pet. denied) (mem.op.). The viability of a tortious interference with inheritance claim was not an issue in that appeal and the Court did not

purport to recognize it as a cause of action. Moreover, the net effect of our judgment was to reverse and render judgment that a claimant take nothing on a damages claim she had predicated on alleged tortious interference with inheritance. *Id.* at *7.

cause of action for tortious interference with inheritance. They point to *Pope v. Garrett*, 147 Tex. 18, 211 S.W.2d 559 (1948), in which the supreme court discussed whether a constructive trust could be imposed on real property that passed to the heirs of Carrie Simons, who died intestate after some of those heirs had forcibly prevented her from signing a will devising the property to Cynthia Garrett, a person not related to Simons. The court concluded that equity could intervene to "prevent a wrongdoer, who by his fraudulent or otherwise wrongful act has acquired title to property, from retaining and enjoying the beneficial interest therein, by impressing a constructive trust on the property in favor of the one who is truly and equitably entitled to the same." *Id.* at 560. The court did not, however, hold that an action for damages was available to the would-be beneficiary of Simons's will. Rather, it recognized that there was a "conflict of authority on whether an action at law will lie against the heir for tort." *Id.* (discussing observation made by author of *Scott on Trusts* ). The court was not required to resolve that conflict because the suit before it was not an action at law for damages, but a suit in equity to prevent Simons's heirs from keeping real property they acquired through wrongful conduct by compelling them to surrender that property to the intended legatee. *Id.*[2] In the present case, the Archers are not seeking to impose a constructive trust on Jack Archer's estate. The Archers have already, through guardianship proceedings and related litigation, successfully reinstated Jack Archer's original estate plan and thereby restored the inheritance rights

they contend Anderson tortiously interfered with. Upon Jack Archer's death, they received their inheritance. The damages they sought in the present proceeding, moreover, were principally composed of the attorneys' fees they incurred in order to receive that inheritance.

The Archers also assert that the Legislature has recognized the existence of a cause of action for tortious interference with inheritance in Texas Estates Code section 54.001. *See* Tex. Estates Code § 54.001. That section provides that "the filing or contesting in probate court of a pleading related to a decedent's estate does not constitute tortious interference with inheritance of the estate." *Id.* § 54.001(a). This provision, which was originally legislatively enacted after the *King v. Acker* decision, does not reflect the Legislature's affirmative recognition or approval of a new cause of action; indeed, there is no reference to the elements that a claimant would be required to prove or any remedies that could be obtained. Rather, Section 54.001(a) represents no more than the Legislature's intent to shield persons who file or contest probate pleadings from being subjected to asserted claims of tortious interference with inheritance, whatever the viability or merits of such a claim might be.

■ We similarly reject the Archers' additional argument that a tortious-interference-with-inheritance tort is merely a subset of the tort, previously recognized by the Texas Supreme Court, of tortious interference with a contract or prospective contractual or business relationship. Our reasons begin with the nature of the inter-

---

**2.** Because the issue was the imposition of a constructive trust, an equitable remedy, rather than a cause of action at law for damages, the court found inapposite the heirs' argument that Garrett was not entitled to any relief because she had no existing right in Simons's property and thus was "deprived by the acts of the defendants of nothing but an expectancy or hope to become a devisee." *Pope v. Garrett*, 147 Tex. 18, 211 S.W.2d 559, 561 (1948).

ests that the tort would protect. A successful claim for tortious interference with an existing or prospective contract requires evidence of an enforceable contract right or a reasonable probability that an enforceable contract would have been entered into but for the interference. *See Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 207 (Tex.2002); *Richardson–Eagle, Inc. v. William M. Mercer, Inc.*, 213 S.W.3d 469, 475–76 (Tex.App.—Houston [1st Dist.] 2006, pet. denied). In contrast, for a variety of historical and policy reasons, a prospective beneficiary's interest in receiving an inheritance is merely in the nature of an expectancy or hope. *See Rothermel v. Duncan*, 369 S.W.2d 917, 923 (Tex.1963) ("A person of sound mind has a perfect legal right to dispose of his property as he wishes."). The Restatement likewise acknowledges that the cause of action that section 774B would create "represents an *extension* to a type of non-contractual relation of the principle found in the liability for intentional interference with prospective contracts." Restatement (Second) of Torts § 774B cmt. a (1979) (emphasis added). Again, we, as an intermediate appellate court, decline to decide whether the creation of a new cause of action is justified. *See Ritchie v. Rupe*, 443 S.W.3d 856, 878 (Tex.2014) ("When deciding whether to recognize 'a new cause of action and the accompanying expansion of duty,' this Court 'perform[s] something akin to a cost-benefit analysis to assure that this expansion of liability is justified.' ") (quoting *Roberts v. Williamson*, 111 S.W.3d 113, 118 (Tex.2003)).

Further confirming the novelty of the Archers' tortious-interference-with-inheritance tort is the result it would ultimately achieve for them here. In net effect, the Archers' purported tortious-interference-with-inheritance cause of action would serve principally as a fee-shifting mechanism, enabling them to recover attorneys' fees incurred in the guardianship proceedings and related litigation concerning Jack Archer's estate—fees that are otherwise unrecoverable under the "American Rule." *See Tucker v. Thomas*, 419 S.W.3d 292, 295 (Tex.2013) ("Texas has long adhered to the American Rule with respect to awards of attorney's fees, which prohibits the recovery of attorney's fees from an opposing party in legal proceedings unless authorized by statute."); *1/2 Price Checks Cashed v. United Auto. Ins. Co.* 344 S.W.3d 378, 382 & n. 2 (Tex.2011) (noting that Texas adheres to American Rule in contrast to English Rule, which permits courts to award attorneys' fees to prevailing party). To permit the Archers to recover here would, similarly, raise a litany of questions regarding the contours and scope of the cause of action—questions that should properly be resolved by the Legislature or Texas Supreme Court first.

## CONCLUSION

For these reasons, we reverse the trial court's judgment and render judgment that the Archers take nothing.