# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-20-00564-CV

**Scientific Machine & Welding, Inc., Appellant**

**v.**

**Kevin Rose, Appellee**

### FROM THE 419TH DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-GN-18-005034, THE HONORABLE DUSTIN M. HOWELL, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Scientific Machine & Welding, Inc. (Scientific) appeals from the trial court's order granting Kevin Rose's motion for summary judgment on Scientific's claims arising from alleged theft of trade secrets. For the following reasons, we will affirm the trial court's order.

## BACKGROUND

Scientific designs and manufactures custom equipment and specialty machine parts for other companies. Rose is a former employee and officer of Scientific. In August 2018, Scientific filed suit against Rose, alleging that he improperly released designs and other proprietary information to FlashParking.

Scientific alleges that, as its employee, Rose's "primary function was to both develop manufacturing drawings/blueprints for Scientific to manufacture the necessary products and to facilitate orders of the products from [Scientific's] clients." One of Rose's principal duties was to "service" FlashParking, for which Scientific designed and produced "smart stations," i.e.,

kiosks for the processing of payments at parking lots. Scientific alleges that in 2017, it entered into an agreement with FlashParking that "precluded the delivery of [Scientific's] design work for the smart stations until FlashParking tendered all required payments."

On May 1, 2018, Rose ceased employment with Scientific and "immediately began working for FlashParking as a senior officer." Shortly after, he "improperly released to [FlashParking] design work related to the smart stations . . . in violation of the contract between the two companies." When he left Scientific, Rose "had in his possession a number of the original manufacturer drawings and design work from Scientific with regards to the smart stations and other products, as well as vendor lists and other proprietary information." Since leaving Scientific, Rose allegedly "has used Scientific's trade secrets[1] for the purpose of manufacturing and selling smart stations and other products, in competition with Scientific."

Scientific asserted causes of action against Rose for violating the Texas Uniform Trade Secrets Act (TUTSA), *see* Tex. Civ. Prac. & Rem. Code §§ 134A.001–.008; breach of contract; breach of an "implied contract of confidentiality"; and breach of fiduciary duties. After answering the lawsuit and counterclaiming for attorney's fees, Rose filed a hybrid traditional and no-evidence motion for summary judgment as to all of Scientific's claims. Scientific filed a no-evidence cross-motion for summary judgment as to Rose's claim for attorney's fees. After a hearing on both motions and the parties' respective evidentiary objections, the trial court

---

[1] The trade secrets that Scientific specifically identified in its live pleading are the "manufacturing drawings and design work" for the smart stations. While Scientific alleges that when he ceased employment with Scientific, Rose took with him "vendor lists" and "design work" for unspecified "other products," it does not specifically allege that those items are trade secrets. Therefore, we use the term "drawings" to mean the "manufacturing drawings and design work" for the smart stations (the information underlying the bulk of Scientific's allegations); the general term "design work" to refer to any drawings and related work product that Scientific performed for any customer; and the term "information at issue" to encompass the drawings, design work, and customer and vendor lists.

2

overruled each party's evidentiary objections, granted Scientific's motion as to Rose's attorney's fees, and granted Rose's motion as to each of Scientific's claims without specifying the grounds for the summary judgment. Scientific perfected this appeal.

## DISCUSSION

Scientific contends that the trial court erred in granting Rose's motion for summary judgment as to each of Scientific's claims.[2]

### TUTSA claim

In his summary-judgment motion, Rose argued that he was entitled to judgment as a matter of law on Scientific's TUTSA claim because (1) Scientific is not a current "owner" of the drawings and thus lacked standing, *see id.* § 134A.002(3-a) (defining "owner"); (2) the drawings are not a "trade secret" because they could have been acquired by "proper means" through reverse engineering, *see id.* § 134A.002(4), (6) (defining "proper means" and "trade secret," respectively); (3) Scientific failed to undertake "reasonable measures" to keep the information at issue secret, *see id.* § 134A.002(6)(A); and (4) Scientific waived the trade-secret status of the drawings by producing them during discovery without designating them "confidential" or otherwise seeking to keep them secret under the operative protective order. Because we conclude that traditional summary judgment on the TUTSA claim was proper under the third ground of failure to take reasonable measures to keep the information secret, we address only that one. *See* Tex. R. Civ. P. 166a(c); Tex. R. App. P. 47.1.

TUTSA defines a "trade secret" as

---

[2] Because the standard of review applying to summary judgments is well-established, we do not recite it here. *See Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005); *see also* Tex. R. Civ. P. 166a(c), (i).

3

all forms and types of information, including business, scientific, technical, economic, or engineering information, and any formula, design, prototype, pattern, plan, compilation, program device, program, code, device, method, technique, process, procedure, financial data, or list of actual or potential customers or suppliers, whether tangible or intangible and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if:

> (A) the owner of the trade secret has taken reasonable measures under the circumstances to keep the information secret; and

> (B) the information derives independent value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

Tex. Civ. Prac. & Rem. Code § 134A.002(6). Rose argued in his summary-judgment motion that the information at issue does not meet the definition of a trade secret because discovery had revealed that Scientific made *no* efforts—much less "reasonable efforts"—to keep the information secret, evidenced by the following: (1) the deposition of Alan Basta, Scientific's owner and president, in which he averred that all work product related to the company's projects was available to all of Scientific's employees at all times and was not password-protected, and his own work email account (which he used to correspond with customers) and the company's vendor lists were also not password-protected;[3] (2) correspondence demonstrating that third-party vendors were provided the drawings without any restrictions, such as non-disclosure agreements; (3) Rose's affidavit stating that after he informed Basta he would be leaving Scientific's employ to work for FlashParking, Basta allowed Rose to continue working for three days, during which time Rose had "full access" to the design work for the smart stations, related

---

[3] In response to deposition questions about what efforts Scientific took to keep its alleged trade secrets confidential, Basta responded that the company did "the usual stuff" but could not articulate any specific measures it took, instead stating that he expected he could "rely on" Rose and other employees to protect the information.

4

accessories, and "every other product" for any of Scientific's clients, as well as customer and vendor lists; and (4) despite having the opportunity under a protective order to designate the drawings as "confidential" during this litigation, Scientific failed to do so and produced them without such designation. *See Baxter & Assocs., L.L.C. v. D & D Elevators, Inc.*, No. 05-16-00330-CV, 2017 WL 604043, at *10 (Tex. App.—Dallas Feb. 15, 2017, no pet.) (mem. op.) (concluding that evidence was legally insufficient to show that information was "the subject of any efforts to maintain its secrecy" where employer failed to have employees sign non-compete agreements, did not label information as "confidential" or "proprietary," and did not protect information through passwords or encryption).

In its response, Scientific identified the following as evidence of the "reasonable measures" it took to keep the information at issue secret: (1) an "Employee Training Attendance Record" that Rose and other employees signed acknowledging their attendance at a training session, to which was appended a two-page memo entitled "Compliance With the Quality Management System"; (2) a statement in Basta's affidavit that he had instructed then-employee Rose "not to remove any schematics/blue prints and instructions" from Scientific's site, that Rose had "agreed" not to remove them or disclose them to others, and that Basta informed Rose that "such documents were confidential"; and (3) a letter of intent (LOI) that Rose signed on behalf of Scientific, which gave FlashParking the "exclusive" right to the drawings after its purchase of 500 smart stations but purportedly "precluded" transfer of the drawings until after that purchase. As to the training-attendance record and attached memo, nothing therein creates a genuine issue of material fact as to any measures that Scientific took to keep any information secret—it does not mention confidentiality, secrecy, privacy, or proprietary information and does

5

not address any procedures for safeguarding Scientific's information.[4]  Rather, the memo addresses quality-control issues.  As for the LOI, the mere provision therein to which Scientific points—that "all design work performed by" Scientific "will become the exclusive property of [FlashParking] after an agreed upon number of units have been purchased"—does not create a genuine issue of material fact about any reasonable measures that Scientific took to safeguard the secrecy of the drawings.

Finally, the statements in Basta's affidavit that he informed Rose that "schematics/blue prints and instructions for any components" of products for all customers were "confidential" and that he was not to remove them from Scientific's site do not create a genuine issue of material fact about whether Scientific took reasonable measures to keep any information secret, in light of Basta's testimony that the information at issue was available to any employee at any time and was not password-protected.  Furthermore, in his affidavit Basta averred that he instructed Rose that "when there was a need to send design work" to vendors, he should send it via email or by hardcopy, albeit with "as limited included information as needed."  Permitting Rose to send design work to third parties without requiring those parties to keep the information confidential is not consistent with taking reasonable measures to safeguard alleged trade secrets. And Scientific cites no evidence of enforceable non-disclosure agreements it entered into with any party, including Rose, and has identified no internal documents designating the information at issue as confidential.  On this record, and viewing the evidence in the light most favorable to Scientific, no reasonable factfinder could conclude that Scientific took "reasonable measures

---

[4] The memorandum does state that Scientific will endeavor to "safeguard" any "Customer property"—that is, protect it from loss or damage and the like—but such policy is not relevant to whether Scientific took measures to safeguard its *own* trade-secret or confidential and proprietary information from disclosure to others.

under the circumstances" to keep the information at issue secret. *See* Tex. Civ. Prac. & Rem. Code § 134A.002(6); *Baxter & Assocs.*, 2017 WL 604043, at \*10; *see also Buck v. Palmer*, 381 S.W.3d 525, 527 (Tex. 2012) ("Undisputed evidence may be conclusive of the absence of a material fact issue, but only if reasonable people could not differ in their conclusions as to that evidence."); *cf. Snowhite Textile & Furnishings, Inc. v. Innvision Hospitality, Inc.*, No. 05-18-01447, 2020 WL 7332677, at \*7 (Tex. App.—Dallas Dec. 14, 2020, no pet.) (mem. op.) (determining that company's requiring employees to sign non-disclosure agreements and limiting employees' access to password-protected software that ran on internal network and was loaded only on internal computers constituted legally sufficient evidence of reasonable measures to keep information secret). We overrule Scientific's first issue.

### *Breach-of-fiduciary-duty claim*

As to Scientific's breach-of-fiduciary-duty claim, Rose asserted that he was entitled to summary judgment as a matter of law because the claim is preempted by TUTSA, *see* Tex. Civ. Prac. & Rem. Code § 134A.007, and that, in any event, Scientific produced no evidence of any of the elements of its claim, *see* Tex. R. Civ. P. 166a(i); *see also First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 220 (Tex. 2017) (listing elements of claim for breach of fiduciary duty). We will address Rose's no-evidence challenge first. *See Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004).

To support its claim, Scientific identifies evidence of the following actionable conduct of Rose: (1) he released the drawings to FlashParking, (2) he solicited vendors of Scientific both while an employee and afterwards, and (3) he removed customer and vendor lists from Scientific. However, as to each of these alleged acts, we conclude that no-evidence

7

summary judgment was proper because Scientific did not come forth with legally sufficient evidence of any damages proximately caused by such conduct. *See* Tex. R. Civ. P. 166a(i); *Merriman v. XTO Energy, Inc.*, 407 S.W.3d 244, 248 (Tex. 2013). The only evidence Scientific offered in support of damages is that it spent time and resources on the smart-station design work for FlashParking, that the value of such work was over $100,000, and that Rose testified that the cost to reverse engineer the design work would be $4,225.[5] We first conclude that such evidence is not relevant to Rose's alleged solicitation of vendors and appropriation of customer and vendor lists and does not, therefore, constitute legally sufficient evidence to support damages as to such conduct.

As to Rose's alleged disclosure of the drawings to FlashParking, Scientific's business records attached to its response to Rose's summary-judgment motion show that FlashParking ultimately purchased the requisite 500 units (within a few months of Rose leaving Scientific's employ) and, therefore—pursuant to the LOI—the drawings became FlashParking's exclusive property. Because Scientific and FlashParking agreed that the drawings would become FlashParking's exclusive property upon a condition that did, in fact, occur, Scientific's citation to the amount it spent on the design work, without more, does not constitute legally sufficient evidence of any damages it incurred because such costs were necessarily contemplated by the LOI and the parties' negotiation thereof. In other words, Scientific incurred those costs

---

[5] In his affidavit, Rose averred that Scientific's design work for the smart stations it produced for FlashParking began with FlashParking providing Scientific a "life size" model of the kiosk "made out of plywood and particle board"—a "simple, wooden box with holes for the attachment of component pieces." Then, "[t]o produce the fabrication and assembly drawings," Scientific's staff (overseen by Rose) "made visual observations and took measurements" of the wooden prototype and entered the measurements into a computer-aided design-and-drafting (CADD) program. Scientific did not controvert this evidence of the origin of the smart-station design.

8

because of the LOI and FlashParking's purchase of smart-station units, not because of Rose's alleged acts. Accordingly, the trial court properly granted no-evidence summary judgment on Scientific's claim for breach of fiduciary duty.

***Breach-of-contract claim***

In his summary-judgment motion, Rose asserted that Scientific could produce no evidence of any of the four elements of its breach-of-contract claim. *See USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 502 n.21 (Tex. 2018) (listing elements). We agree that there is no evidence of the first element (the existence of a valid contract) and therefore address only that one.

As evidence of a valid contract, Scientific cites the following items attached to its summary-judgment response: (1) the "Employee Training Attendance Record," which Scientific calls an "Employment Agreement"; (2) Basta's affidavit, allegedly confirming an oral contract between Rose and Scientific regarding the treatment of proprietary information; and (3) the LOI. However, these items do not constitute legally sufficient evidence of a valid contract between Rose and Scientific.

The training attendance record is merely an acknowledgment that Rose signed confirming he had attended the quality-control company training. The memo appended thereto explains Scientific's commitment to a "Quality Management System" and expectation that employees adhere to it, but it does not contain any mutual promises exchanged between Rose and Scientific, not to mention any promise by Rose that he would keep any drawings or other company information secret from people outside the company. *Cf. Federal Sign v. Texas S. Univ.*, 951 S.W.2d 401, 408–09 (Tex. 1997) (explaining that consideration, or "a bargained for

9

exchange of promises," is necessary element of valid contract and that "[a] contract that lacks consideration, lacks mutuality of obligation and is unenforceable"), *superseded by statute as stated in Nazari v. State*, 561 S.W.3d 455 (Tex. 2018). Accordingly, the training attendance record constitutes no evidence of a valid contract to support Scientific's claim.

We conclude similarly as to the cited portions of Basta's affidavit, in which Basta avers that, while Rose was a Scientific employee, Basta "instructed" Rose not to "remove any schematics/blue prints and instructions" related to customer projects, and Rose "agreed that he would neither remove" such information "nor disclose any such documents" to others. We disagree with Scientific that such testimony evidences an enforceable "oral contract" between Rose and Scientific regarding the treatment of proprietary information for the same reason we determined the training attendance record does not—the alleged oral contract lacks consideration. *See id.* Taking Basta's averment as true that Rose orally promised not to disclose Scientific's proprietary information, Basta did not promise anything to Rose in exchange.

Finally, the LOI does not constitute evidence of a valid contract between Rose and Scientific for the simple reason that it is not a contract between *Rose* and Scientific; moreover, it does not contain any mutual promises or obligations between the two parties. Rather, to the extent that it constitutes an enforceable agreement, the agreement is between Scientific and KleverLogic (FlashParking's predecessor), which Rose and Basta signed in their representative capacities for Scientific. The LOI, therefore, does not constitute any evidence of a valid contract between Rose and Scientific to support the first element of Scientific's claim for breach of contract.

Accordingly, the trial court did not err in granting Rose no-evidence summary judgment on Scientific's breach-of-contract claim.

10

*Breach-of-implied-contract-of-confidentiality claim*

In his summary-judgment motion, Rose argued that a cause of action for "breach of an implied contract of confidentiality" does not exist under Texas law because, to the extent that there is a duty to keep an employer's information confidential, such duty is fiduciary rather than contractual in nature. *See Mabrey v. SandStream, Inc.*, 124 S.W.3d 302, 316 (Tex. App.—Fort Worth 2003, no pet.) ("Even apart from any written contract, a fiduciary relationship arises from an employment relationship forbidding an employee from using trade secrets or confidential or proprietary information in a manner adverse to the employer."); *see also Hyde Corp. v. Huffines*, 314 S.W.2d 763, 770 (Tex. 1958) (noting that "in the area of confidential relationships," party who discloses another party's trade secret or confidential information may be subject to tort liability apart from breach of any express agreement for which party may be liable). Rose further argued that Scientific was attempting to recast its cause of action for breach of fiduciary duty as a contractual claim—dubbing it a claim for breach of an "implied contract of confidentiality"—to avoid preemption under TUTSA. Although we did not need to reach the preemption issue in our discussion of Scientific's claim for breach of fiduciary duty, we agree with Rose that Scientific may not maintain its cause of action for "breach of an implied contract of confidentiality" because Scientific has not cited any Texas cases recognizing such cause of action, and we have found none.[6] Our precedent dictates that this Court should not recognize a

---

[6] Scientific cites *Lamons Metal Gasket Company v. Traylor*, 361 S.W.2d 211, 212–13 (Tex. App.—Houston 1962 writ ref'd n.r.e.), as support for its contention that such cause of action exists, but the cause of action at issue in that case was wrongful interference with contract rights. While in dicta that court stated,

> The law will imply as part of the contract of employment an agreement not to disclose information which the employee receives as an incident of his

new cause of action "in the first instance." *Anderson v. Archer*, 490 S.W.3d 175, 177 (Tex. App.—Austin 2016), *aff'd*, 556 S.W.3d 228 (Tex. 2018). In the absence of recognition by the Supreme Court of Texas or the legislature, we conclude that a common-law cause of action for "breach of an implied contract of confidentiality" does not exist in Texas. *See Hampton v. Equity Tr. Co.*, 607 S.W.3d 1, 5 (Tex. App.—Austin 2020, pet. denied) (declining to recognize new common-law cause of action for aiding and abetting fraud); *Anderson*, 490 S.W.3d at 177 (declining to recognize new cause of action for interference with inheritance rights). Accordingly, the trial court did not err in granting Rose summary judgment on Scientific's claim for breach of an implied contract of confidentiality.

## CONCLUSION

We affirm the trial court's summary-judgment order.

_____

Thomas J. Baker, Justice

Before Justices Baker, Triana, and Smith

Affirmed

Filed: March 23, 2022

_____

        employment, if the employee knows that his employer desires such information kept secret, or if, under the circumstances, he should have realized that secrecy was desired,

it did not hold that such a cause exists or base its holding on such statement. Moreover, Scientific has not identified any valid employment contract between it and Rose.