# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

### NO. 03-21-00305-CV

---

**Dianne Hensley, Appellant**

**v.**

**State Commission on Judicial Conduct; David Schenck, in his official capacity as Chair of the State Commission on Judicial Conduct; Janis Hold, in her official capacity as Vice-Chair of the State Commission on Judicial Conduct; Frederick C. Tate, in his official capacity as Secretary of the State Commission on Judicial Conduct; and David C. Hall, David M. Petronella, Sujeeth B. Draksharam, Ronald E. Bunch, Valerie Ertz, M. Patrick Maguire, Clifton Roberson, Lucy M. Hebron, Gary L. Steel, and Katy P. Ward, in their official capacities as Members of the State Commission on Judicial Conduct, Appellees[1]**

---

**FROM THE 459TH DISTRICT COURT OF TRAVIS COUNTY
NO. D-1-GN-20-003926, THE HONORABLE JAN SOIFER, JUDGE PRESIDING**

---

### MEMORANDUM OPINION

Dianne Hensley appeals from the trial court's order dismissing her suit against the State Commission on Judicial Conduct (the Commission) and David Schenck, in his official capacity as Chair of the State Commission on Judicial Conduct; Janis Hold, in her official capacity as Vice-Chair of the State Commission on Judicial Conduct; Frederick C. Tate, in his official capacity as Secretary of the State Commission on Judicial Conduct; and David C. Hall, David M. Petronella, Sujeeth B. Draksharam, Ronald E. Bunch, Valerie Ertz, M. Patrick Maguire, Clifton Roberson, Lucy M. Hebron, Gary L. Steel, and Katy P. Ward, in their official

---

[1] Pursuant to Rule 7.2 of the Texas Rules of Appellate Procedure, the current officers and members of the State Commission on Judicial Conduct have been automatically substituted for its former officers and members.

capacities as Members of the State Commission on Judicial Conduct (collectively "the Officials"). Hensley brought claims against the Commission and the Officials alleging that they violated the Texas Religious Freedom Restoration Act, *see* Tex. Civ. Prac. & Rem. Code § 110.005 (the TRFRA), and acted ultra vires regarding the Commission's disciplinary action against her. Hensley also sought declaratory relief under the Texas Uniform Declaratory Judgments Act. *See id.* §§ 37.001-.011 (the UDJA). On the Commission's and the Officials' plea to the jurisdiction and, in the alternative, plea in estoppel, the trial court dismissed Hensley's claims, concluding that (1) Hensley failed to exercise her exclusive statutory remedy for issues related to the disciplinary proceeding; (2) Hensley failed to comply with jurisdictional statutory notice requirements governing her claims under the TRFRA; (3) sovereign immunity barred her claims; (4) her claims were barred by statutory immunity under Texas Government Code section 33.006, *see* Tex. Gov't Code § 33.006; (5) her claims were not ripe; (6) her claims sought impermissible advisory opinions; and (6) her claims were barred by the doctrine of res judicata. We will affirm.

**BACKGROUND**

Hensley is a justice of the peace in Waco, Texas. After a Waco newspaper published an article about Hensley, which included an interview with her, the Commission sent Hensley a letter of inquiry asking her to respond to written questions. The Commission's questions inquired into Hensley's policy, from the time she assumed the bench until the date of the inquiry, regarding performing wedding ceremonies for same-sex couples. The Commission also asked Hensley to confirm whether the Waco newspaper article, which was titled "No courthouse weddings in Waco for same-sex couples, 2 years after Supreme Court ruling" and

2

included quotes attributed to Hensley regarding the issue of performing same-sex marriages, accurately and fairly represented her statements to the media on that issue. The Commission also asked Hensley to discuss whether, in her opinion, refusing requests to perform same-sex marriages but continuing to perform marriage ceremonies for heterosexual couples violated Canons 2(A), 3B(5), or 3B(6) of the Texas Code of Judicial Conduct. In her June 20, 2018 response, Hensley included contentions that her conduct was protected by the TRFRA.

In January 2019, the Commission wrote Hensley and identified two alleged violations of the Texas Code of Judicial Conduct and one alleged violation of the Texas Constitution's restrictions on judicial conduct. An attached unsigned "tentative Public Warning" identified (1) an alleged violation of Canon 3B(6), which prohibits bias and prejudice in the performance of judicial duties; (2) an alleged violation of Canon 4A(1), which prohibits conduct in extra-judicial activities that would cast reasonable doubt on the judge's capacity to act impartially; and (3) an alleged violation of Article V, Section 1-a(6)(A) of the Texas Constitution, which prohibits "willful or persistent conduct that is clearly inconsistent with the proper performance of [the judge's] duties or casts public discredit upon the judiciary or administration of justice." The Commission gave Hensley the option of either accepting the tentative Public Warning or appearing before the Commission for a hearing. Hensley elected to appear for a hearing, and the tentative Public Warning never became effective and remained confidential by statute.[2]

At an August 2019 hearing before the Commission, Hensley appeared and was represented by three attorneys. Hensley testified under oath to the Commission's questions.

_____

[2] The tentative Public Warning was not made public before the conclusion of the Commission's disciplinary proceedings and only became public when Hensley attached a copy of it as an exhibit to her pleadings in the underlying trial court proceedings.

Hensley argued that her conduct was protected by the TRFRA and disputed that her conduct constituted a violation of the Texas Constitution or of Canons 3B(6) or 4A(1). She also asserted that she was protected from discipline by Article 1, Section 8 of the Texas Constitution. *See* Tex. Const. art 1, § 8 (providing that "[e]very person shall be at liberty to speak, write or publish his opinions on any subject" and that "no law shall ever be passed curtailing the liberty of speech or of the press"). After the hearing, the Commission issued a Public Warning on November 12, 2019. The Public Warning included the following findings of fact:

1. At all times relevant hereto, the Honorable Dianne Hensley was Justice of the Peace for Precinct 1, Place 1, in Waco, McLennan County, Texas.

2. On June 24, 2017, the Waco Tribune newspaper published an article on their website entitled *No Courthouse Weddings in Waco for Same-sex Couples, 2 Years After Supreme Court Ruling* which reported that Justice of the Peace Dianne Hensley "would only do a wedding between a man and a woman."

3. From August 1, 2016, to the present, Judge Hensley has performed opposite-sex weddings for couples, but has declined to perform same-sex wedding ceremonies.

4. Beginning on about August 1, 2016, Judge Hensley and her court staff began giving all same-sex couples wishing to be married by Judge Hensley a document which stated "I'm sorry, but Judge Hensley has a sincerely held religious belief as a Christian, and will not be able to perform any same sex weddings." The document contained a list of local persons who would officiate a same-sex wedding.

5. Judge Hensley told the Waco-Tribune, the public and the Commission that her conscience and religion prohibited her from officiating same-sex weddings.

6. At her appearance before the Commission, Judge Hensley testified that she would recuse herself from a case in which a party doubted her impartiality on the basis that she publicly refuses to perform same-sex weddings.

Based on the record before it and these findings, the Commission determined that Hensley should "be publicly warned for casting doubt on her capacity to act impartially to persons appearing

4

before her as a judge due to the person's sexual orientation in violation of Canon 4A(1) of the Texas Code of Judicial Conduct."

The Public Warning was sent to Hensley's counsel on November 14, 2019, after which Hensley had 30 days to file an appeal. *See* Tex. Gov't Code § 33.034(a) (judge who receives sanction or censure by Commission entitled to review of Commission's decision); (b) (judge must file written request for appointment of special court of review with chief justice of supreme court not later than 30th day after date on which Commission issues its decision); (e) (providing for review by trial de novo as that term is used in appeal of cases from justice to county court). Hensley did not file an appeal. Instead, she filed the underlying suit in December 2019.[3]

In her petition, Hensley asserted that the Commission violated her rights under the TRFRA by punishing her for "recusing herself from officiating at same-sex weddings, in accordance with the commands of her Christian faith." Hensley asserted that "the Commission's investigation and punishment" of her for "acting in accordance with the commands of her Christian faith" substantially burdened her free exercise of religion. Hensley also asserted that "the Commission's threat to impose further discipline on Judge Hensley if she persists in recusing herself from officiating at same-sex weddings" also substantially burdens her free exercise of religion. Hensley alleged that "the Commission's investigation and punishment" of her and "its threat to impose further discipline" on her "if she persists in recusing herself from officiating at same-sex weddings" further no compelling governmental interest. Hensley asserted that the Commission's determination that her actions violated Canon 4A(1) because they

---

[3] The underlying suit was originally filed in McLennan County but, after a contested hearing, venue was transferred to Travis County District Court.

cast reasonable doubt on her capacity to act impartially as a judge was erroneous because, she contends, "disapproval of an individual's *behavior* does not evince bias toward that individual as a *person* when they appear in court." Hensley described the Commission's determination as "absurd" because, according to her, the Commission "equate[d] a judge's publicly stated opposition to an individual's behavior as casting doubt on the judge's impartiality toward litigants who engage in that conduct." She asserted that under this reasoning, "no judge who publicly opposes murder or rape could be regarded as impartial when an accused murderer or rapist appears in his court." Hensley alleged that, pursuant to the TRFRA, she was entitled to declaratory and injunctive relief, compensatory damages, and attorneys' fees. *See* Tex. Civ. Prac. & Rem. Code § 110.005 (person who successfully asserts claim or defense under TRFRA entitled to declaratory relief under UDJA, injunctive relief, compensatory damages, and reasonable attorneys' fees).

Hensley sought additional declaratory relief under the UDJA. Specifically, Hensley sought declarations that (1) a judge does not violate Canon 4A by merely expressing disapproval of homosexual behavior or same-sex marriage or by belonging to or supporting a church or charitable organization that opposes homosexual behavior or same-sex marriage (Declaration 1); (2) the officiating of weddings is not a "judicial duty" under Canon 3B(6) (Declaration 2); (3) Hensley's decision to recuse herself from officiating at same-sex weddings does not constitute "willful or persistent conduct clearly inconsistent with the proper performance of [a judge's] duties or casts public discredit upon the judiciary or administration of justice" such that it violates article V, section 1-a(6)(A) of the Texas Constitution (Declaration 3); and (4) the Commission's interpretation of Canon 4A violates article I, section 8 of the Texas

6

Constitution (Declaration 4). Hensley also sought this declaratory relief against the Officials based on her assertion that they had acted ultra vires.

The Commission and the Officials filed a plea to the jurisdiction and, in the alternative, a plea in estoppel. They argued that Hensley's claims should be dismissed for lack of jurisdiction because she failed to utilize the exclusive statutory review process provided by the Legislature to challenge the Commission's determination to issue the Public Warning. They also asserted that sovereign immunity bars Hensley's claims brought under the TRFRA because she failed to comply with the TRFRA's statutory notice requirements. The Commission and the Officials argued further that sovereign immunity bars Hensley's UDJA claims and that she failed to plead any ultra vires conduct by the Officials. They also maintained that, to the extent Hensley seeks declarations about her potential future conduct, the court lacks jurisdiction because those issues are not ripe for adjudication and Hensley is seeking impermissible advisory opinions. In the alternative, the Commission and the Officials asserted that Hensley's claims should be dismissed because they are barred by the doctrines of res judicata and collateral estoppel.

After an evidentiary hearing, the trial court granted the plea to the jurisdiction, concluding that the court lacked jurisdiction over Hensley's claims concerning issues pertinent to her disciplinary proceeding because she failed to exercise her exclusive statutory remedy. The trial court concluded that it lacked jurisdiction over Hensley's claims under the TRFRA because she failed to strictly comply with jurisdictional statutory notice requirements. The trial court also concluded that Hensley's claims were barred by sovereign immunity and statutory immunity under section 33.006 of the Texas Government Code, were not ripe for adjudication and sought

impermissible advisory opinions, and were barred by the doctrine of res judicata. Hensley then perfected this appeal.

## DISCUSSION

*Standard of Review*

A plea to the jurisdiction is a procedural mechanism "through which a party may challenge a trial court's authority to decide the subject matter" of a claim. *Texas Dep't of State Health Servs. v. Balquinta*, 429 S.W.3d 726, 737 (Tex. App.—Austin 2014, pet. dism'd). Because whether a court has subject-matter jurisdiction is a question of law, we review de novo a trial court's ruling on a plea to the jurisdiction. *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225 (Tex. 2004).

A plea to the jurisdiction may challenge whether the plaintiff has alleged facts that affirmatively demonstrate a court's jurisdiction to hear the case, the existence of those jurisdictional facts, or both. *Texas Dep't of Transp. v. Lara*, 625 S.W.3d 46, 52 (Tex. 2021). When the jurisdictional plea challenges the pleadings, we determine whether the plaintiff's pleadings allege facts affirmatively demonstrating subject-matter jurisdiction. *Miranda*, 133 S.W.3d at 226. In making this assessment, we construe the plaintiff's pleadings liberally, taking all assertions as true, and look to the pleader's intent. *Texas Dep't of Crim. Justice v. Rangel*, 595 S.W.3d 198, 205 (Tex. 2020). Allegations found in pleadings may affirmatively demonstrate or negate the court's jurisdiction. *City of Waco v. Kirwan*, 298 S.W.3d 618, 622 (Tex. 2009). If the pleadings affirmatively negate the existence of jurisdiction, the plea may be granted without affording the plaintiff an opportunity to replead. *Miranda*, 133 S.W.3d at 226.

8

When the plea challenges the existence of jurisdictional facts, we must move beyond the pleadings and consider evidence when necessary to resolve the jurisdictional issues. *Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 770 (Tex. 2018); *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554-55 (Tex. 2000). When those challenged jurisdictional facts also implicate the merits of the plaintiff's claim, as in this case, the plaintiff's burden mirrors that of a traditional motion for summary judgment. *Lara*, 625 S.W.3d at 46 (quoting *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 634 (Tex. 2012)). Consequently, we review the relevant evidence in the light most favorable to the plaintiff to determine whether a genuine issue of material fact exists. *Town of Shady Shores v. Swanson*, 590 S.W.3d 544, 550 (Tex. 2019) (citing *Miranda*, 133 S.W.3d at 226). If the evidence creates a fact issue regarding the jurisdictional issue, then the trial court cannot grant the plea to the jurisdiction, and the fact issue will be resolved by the fact finder. *Miranda*, 133 S.W.3d at 227-28. But if the relevant evidence is undisputed or does not raise a fact question on jurisdiction, we rule on the plea as a matter of law. *See id.* at 228.

The State Commission on Judicial Conduct is a constitutionally created agency composed of judges, attorneys, and citizens from the State of Texas. *See* Tex. Const. art. V, § 1-a(2); Tex. Gov't Code § 33.002(a-1) ("The commission is an agency of the judicial branch of state government and administers judicial discipline."). As a state agency, the Commission is entitled to sovereign immunity. *See Miranda*, 133 S.W.3d at 224; *Hagstette v. State Comm'n on Jud. Conduct*, No. 01-19-00208-CV, 2020 WL 7349502, at *4 (Tex. App.—Houston [1st Dist.] Dec. 15, 2020, no pet.) (mem. op.); *see also* Tex. Gov't Code § 33.006 (providing that commission and its members are immune from liability for acts or omissions committed by person within scope of person's official duties). When a governmental entity challenges

9

jurisdiction on immunity grounds, the plaintiff's burden of affirmatively demonstrating jurisdiction includes establishing a waiver of immunity. *Swanson*, 590 S.W.3d at 550.

### TRFRA Claims

We first consider whether the trial court erred by dismissing Hensley's TRFRA claims that relate to the Commission's investigation and determination, after conducting a hearing, to issue a Public Reprimand. Hensley's claims reduce to two complaints. First, she contends that the Commission's investigating and issuing a Public Reprimand were improper because they violated her rights under the TRFRA. Second, she takes issue with the Commission's determination that her conduct did in fact violate Canon 4A. Both these complaints challenge an agency's determination after a hearing. With regard to Hensley's complaint that the Commission's investigation and decision to issue a Public Warning violated her rights under the TRFRA, we note that Hensley could have, and did, raise this as a defense to the Commission's action. *See* Tex. Civ. Prac. & Rem. Code § 110.004 ("A person whose free exercise of religion has been substantially burdened in violation of Section 110.003 or 110.0031 may assert that violation as a defense in a judicial or administrative proceeding without regard to whether the proceeding is brought in the name of the state or by another person."). By issuing the Public Warning in the face of this asserted defense, the Commission implicitly found that its investigation and subsequent Public Warning did not substantially burden Hensley's free exercise of religion. Similarly, regarding whether her conduct violated Canon 4A, the Commission determined that it did. Rather than pursue an appeal of the Commission's determination—the avenue established by the Legislature to obtain review of Commission decisions and set forth in Texas Government Code section 33.034—Hensley filed a proceeding

10

in district court asserting the same argument she presented to the Commission and requesting that the district court declare that the Commission was incorrect in its determinations that (1) Hensley's conduct violated the Code of Judicial Conduct and (2) that its investigation and public reprimand did not substantially burden her free exercise of religion so as to violate the TRFRA. The trial court correctly dismissed this impermissible collateral attack on the Commission's order. *See Chocolate Bayou Water Co. & Sand Supply v. Texas Nat. Res. Conservation Comm'n*, 124 S.W.3d 844, 853 (Tex. App.—Austin 2003, pet. denied) ("Collateral attacks upon an agency order may be maintained successfully on one ground alone—that the order is void."); *see also Browning v. Prostok*, 165 S.W.3d 336, 346 (Tex. 2005) ("A collateral attack is an attempt to avoid the binding force of a judgment in a proceeding not instituted for the purpose of correcting, modifying, or vacating the judgment, but in order to obtain some specific relief which the judgment stands as a bar against.").

Also pursuant to the TRFRA, Hensley sought injunctive relief "that will prevent the Commission and its members from investigating or sanctioning judges or justices of the peace who recuse themselves from officiating at same-sex weddings on account of their sincere religious beliefs." This injunctive relief is not available to Hensley under the TRFRA. The statute provides that a person who *successfully* asserts a claim or defense under the TRFRA is entitled to injunctive relief to prevent the threatened or continued violation. *See* Tex. Civ. Prac. & Rem. Code § 110.005(a)(2). In this case, the trial court properly dismissed Hensley's claims brought under the TRFRA and, consequently, she has not successfully asserted a claim under that statute that would entitle her to injunctive relief.

The trial court also properly dismissed Hensley's claims for relief under the TRFRA that were based on her allegations that the Commission violated her right to religious

11

freedom by "threatening to impose further discipline if she persists in recusing herself from officiating at same-sex weddings." The undisputed evidence, presented at the evidentiary hearing through the testimony of the Commission's Executive Director, was that, since issuing the Public Warning, the Commission has not initiated any new investigation of Hensley, has not initiated any new disciplinary proceeding involving Hensley, and has not communicated to Hensley any threat that any new investigation or disciplinary proceeding is planned or imminent. Because the evidence establishes that the Commission has in fact *not* threatened further disciplinary action against Hensley, she has failed to carry her burden of demonstrating that the TRFRA waives the Commission's immunity for her claim that threats of further discipline by the Commission have burdened her free exercise of religion. *See id.* §§ 111.005 (person who successfully asserts claim under TRFRA entitled to declaratory and injunctive relief), .008(a) (providing that sovereign immunity to suit is waived to extent of liability created by section 110.005).

### UDJA Claims

In addition to the declarations she requested pursuant to the TRFRA, Hensley also sought Declarations 1, 2, 3, and 4 under the UDJA. The trial court dismissed these claims for lack of jurisdiction on several grounds, including that they were barred by sovereign immunity. Because it is dispositive, we first consider whether the trial court correctly concluded that Hensley's UDJA claims were barred by sovereign immunity. The UDJA provides that "[a] person . . . whose rights, status, or other legal relations are affected by a statute . . . may have determined any question of construction or validity arising under the . . . statute . . . and may obtain a declaration of rights, status, or other legal relations thereunder." *Id.* § 37.004(a). The

12

Texas Supreme Court has explained that "the UDJA does not enlarge the trial court's jurisdiction but is 'merely a procedural device for deciding cases already within a court's jurisdiction.'" *Texas Dep't of Transp. v. Sefzik*, 355 S.W.3d 618, 621-22 (Tex. 2011) (per curiam) (quoting *Texas Parks & Wildlife Dep't v. Sawyer Tr.*, 354 S.W.3d 384, 388 (Tex. 2011)). Accordingly, the UDJA "is not a general waiver of sovereign immunity." *Sawyer Tr.*, 354 S.W.3d at 388. Instead, the UDJA only "waives sovereign immunity in particular cases." *Sefzik*, 355 S.W.3d at 622. "For example, the state may be a proper party to a declaratory judgment action that challenges the validity of a statute." *Id.* However, "the UDJA does not waive the state's sovereign immunity when the plaintiff seeks a declaration of his or her rights under a statute or other law." *Id*. at 621. On appeal, Hensley does not challenge the trial court's dismissal of her request for Declarations 1, 2, or 3. Instead, she asserts only that the UDJA waives sovereign immunity for her request for Declaration 4 that "the Commission's interpretation of Canon 4A violates article 1, section 8 of the Texas Constitution." Hensley maintains that this constitutes a challenge to the validity of Canon 4A for which the UDJA provides a waiver of immunity. *See Town of Shady Shores*, 590 S.W.3d at 552 (holding that UDJA provides "only limited waiver for challenges to the validity of an ordinance or statute"). Hensley asserts that, although Canon 4A is not a statute, supreme court precedent in *Patel v. Texas Department of Licensing & Regulation*, 469 S.W.3d 69 (Tex. 2015), supports the conclusion that the UDJA waives sovereign immunity for a claim challenging a Canon of the Code of Judicial Conduct. Hensley asserts that "*Patel* holds that the UDJA allows litigants to sue government entities when challenging the validity of *agency regulations*, even though agency rules are not mentioned in section 37.006(b)" and that "there is no basis for excluding claims that challenge the validity of a judicial canon from the UDJA's waiver of immunity."

In *Patel*, in the context of evaluating whether the plaintiffs had alleged an ultra vires claim, the court held that "because the [plaintiffs] challenge the validity of the cosmetology statutes and regulations, rather than complaining that officials illegally acted or failed to act, the ultra vires exception does not apply." *Id.* at 77. We do not believe that this constitutes a holding that the UDJA waives immunity for challenges to agency regulations. In fact, challenges to agency rules and regulations are properly brought as a rule challenge under Texas Government Code section 2001.038, and courts routinely dismiss challenges to agency rules brought under the UDJA instead of under section 2001.038. *See* Tex. Gov't Code § 2001.038 (validity or applicability of rule may be determined in action for declaratory judgment under Administrative Procedure Act); *see also Patel*, 469 S.W.3d at 78 (stating that "[u]nder the redundant remedies doctrine, courts will not entertain an action brought under the UDJA when the same claim could be pursued through different channels" and that focus of doctrine is "whether the Legislature created a statutory waiver of sovereign immunity that permits the parties to raise their claims through some avenue other than the UDJA"); *id.* at 79 ("When a plaintiff files a proceeding that only challenges the validity of an administrative rule, the parties are bound by the APA and may not seek relief under the UDJA because such relief would be redundant."). In *Patel*, the supreme court concluded that the trial court had jurisdiction over the plaintiffs' claims under the UDJA because they challenged the constitutionality of a statute, along with rules promulgated pursuant to that statute. *Id.* at 80. Here, Hensley's UDJA claim does not purport to challenge any statute; she challenges only the validity of Canon 4A. Moreover, even if *Patel* could be read to stand for the proposition that the UDJA waives immunity for a challenge to an agency regulation, as an intermediate appellate court we will not expand any such waiver to include challenges to Canons of the Texas Code of Judicial Conduct. *See Anderson v. Archer*, 490 S.W.3d 175, 177 (Tex.

14

App.—Austin 2016) (declining to recognize cause of action for tortious interference with inheritance and observing that "[w]e must, in short, follow the existing law rather than change it, and we have adhered to that basic limiting principle in a variety of contexts"), *aff'd, Archer v. Anderson*, 556 S.W.3d 228, 229 (Tex. 2018) (holding that there is no cause of action in Texas for intentional interference with inheritance); *Texas Dep't of Pub. Safety v. Cox Tex. Newspapers, L.P.*, 287 S.W.3d 390, 394-95, 398 (Tex. App.—Austin 2009) (declining to recognize proposed judicial expansion of common-law or constitutional privacy exceptions to mandatory disclosure under Public Information Act), *rev'd on other grounds*, 343 S.W.3d 112, 120 (Tex. 2011) (Texas Supreme Court ultimately adopting proposed expansion).[4]

Because sovereign immunity bars Hensley's claims for declaratory relief under the UDJA, the trial court properly dismissed them.

### *Ultra Vires Claims*

Sovereign immunity does not bar claims alleging that state officials acted ultra vires, or without legal authority, in carrying out their duties. *See Houston Belt & Terminal Ry. Co. v. City of Houston*, 487 S.W.3d 154, 158 n.1 (Tex. 2016) ("[W]hen a governmental officer is sued for allegedly *ultra vires* acts, governmental immunity does not apply from the outset."). An ultra vires action requires a plaintiff to "allege, and ultimately prove, that the officer acted without legal authority or failed to perform a purely ministerial act." *City of El Paso v. Heinrich*, 284 S.W.3d 366, 372 (Tex. 2009). The Texas Supreme Court clarified what it means for an

---

[4] We also note that, rather than challenging the validity of Canon 4A, Hensley is actually challenging the Commission's actions under its own interpretation of the Canon. The UDJA does not provide a waiver for challenges to an agency's interpretation of rules it is charged with enforcing or applying. Complaints that the Commission misinterpreted or misapplied the Canons are properly brought through the available appeal process that Hensley declined to pursue.

official to act "without legal authority." *See Houston Belt & Terminal Ry. Co.*, 487 S.W.3d at 158. The court said that "a government officer with some discretion to interpret and apply a law may nonetheless act 'without legal authority,' and thus *ultra vires*, if he exceeds the bounds of his granted authority or if his acts conflict with the law itself." *Id.* "[U]ltra vires suits do not attempt to exert control over the state—they attempt to reassert the control of the state." *Heinrich*, 284 S.W.3d at 372. To reassert such control, an ultra vires suit must lie against the "allegedly responsible government actor in his official capacity." *Patel*, 469 S.W.3d at 76. Therefore, an ultra vires claim against the Officials must complain of conduct taken pursuant to their authority: their duty to determine whether Hensley's conduct contravened judicial canons and whether that conduct was, as she asserted, nevertheless protected by the TRFRA.

An ultra vires claim against the Officials in the present case, therefore, must be based on the assertion that the Officials acted without legal authority when they rejected her defense under the TRFRA that publicly reprimanding her for her conduct would substantially burden her free exercise of religion. *See* Tex. Gov't Code § 110.004 (person whose free exercise of religion has been substantially burdened in violation of Section 110.003 or 110.031 may assert that violation as defense in administrative proceeding). The dispositive issue, then, is whether the Commission's alleged mistake of law constituted an ultra vires act. The Texas Supreme Court has explained that, when considering whether a legal mistake is an ultra vires act, "it is the mistake's impact on the official's authority that carries dispositive weight." *Hall v. McRaven*, 508 S.W.3d 232, 241 (Tex. 2017). The court explained that an official's mistake in interpreting his enabling authority *can* give rise to an ultra vires claim because it results in a misinterpretation of the bounds of his own authority. *Id.* at 241-42. In *Hall*, the court concluded that the official's alleged misinterpretation of federal privacy law, a law "*collateral* to [the official's] authority,"

16

did not give rise to an ultra vires claim because that federal privacy law did not "suppl[y] the parameters of [his] authority." *Id.* at 242. The court held that "[i]n order to act without legal authority in carrying out a duty to interpret and apply the law, [an official] must have exercised discretion "without reference to or in conflict with the constraints of the law *authorizing [him] to act*." *Id.* (emphasis added).

Informed by the court's explanation in *Hall*, Hensley must have alleged, and ultimately prove, that the Officials exercised their discretion in conflict with the constraints of the law authorizing them to act. Without that showing, Hensley "would simply have no basis for 'reassert[ing] control of the state.'" *Id.* (quoting *Heinrich*, 284 S.W.3d at 372). Here, the Officials carried out their duty to determine whether Hensley's conduct violated Canon 4A and whether punishing that conduct with a Public Reprimand would substantially burden her free exercise of religion. Their discretion in making those determinations was otherwise unconstrained. *Cf. Houston Belt & Terminal Ry. Co.*, 487 S.W.3d at 159 (official's neglecting what he was required to consider in making permeability determination rendered it—right or wrong—ultra vires). As the supreme court explained in *Hall*:

> When the ultimate and unrestrained objective of an official's duty is to interpret collateral law, a misinterpretation is not overstepping such authority; it is a compliant action even if ultimately erroneous. Our intermediate courts of appeals have repeatedly stated that it is not an *ultra vires* act for an official or agency to make an erroneous decision while staying within its authority. Indeed, an *ultra vires* doctrine that requires nothing more than an identifiable mistake would not be a narrow exception to immunity: it would swallow immunity. [] As important as a mistake may be, sovereign immunity comes with a price; it often allows the "improvident actions" of the government to go unredressed. Only when these improvident actions are *unauthorized* does an official shed the cloak of the sovereign and act *ultra vires*.

*Hall*, 508 S.W.3d at 242 (citations omitted).

The Officials—whether right or wrong—were not acting without legal authority in making their determinations regarding Hensley's conduct.[5] Moreover, the Commissioner's determinations did not constitute violations of "a purely ministerial duty." *See id.* at 243 ("Perhaps it goes without saying, but if an official's duty is discretionary, it is not also nondiscretionary."). Because Hensley failed to meet either of the bases for establishing an ultra vires claim against the Officials, the trial court properly dismissed her ultra vires claims for lack of jurisdiction.

## CONCLUSION

Because the trial court lacked jurisdiction to consider Hensley's claims under the TRFRA and the UDJA, and because Hensley failed to establish ultra vires claims against the Officials, the court did not err in granting the plea to the jurisdiction and dismissing the case. Accordingly, we affirm the trial court's judgment.

_____

Thomas J. Baker, Justice

Before Justices Goodwin, Baker, and Smith
  Concurring Opinion by Justice Goodwin

Affirmed

Filed:  November 3, 2022

---

[5] We need not, and do not, express any opinion on the correctness of the Commission's determinations.